## RYDER *v.* FROST.

| 3 | 523 |
|---|---|
| 122 | 676 |

Plaintiff, a resident of Illinois, who had bound himself to defendant to settle a judgment
obtained against a partnership of which they had been the members, wrote to defendant
in New Orleans, that their creditor had consented to compromise his claim by taking a
certain sum as payment in full, stating his willingness to pay one half of that sum but his
inability to do more, and advising defendant to contribute the balance in order to relieve
himself from the debt. On the 20th of September, defendant wrote to plaintiff that he
would pay one-fourth of the sum for the purpose of settling the debt, as soon as the judg-
ment should be entered as satisfied on the records of the court by which it was pro
nounced. Negotiations with the creditor were terminated, and the judgment was can.
celled, on the 10th of November, and this suit commenced on the 1st August following.
*Held*, that the proposition made by defendant being beneficial to plaintiff, his assent
may be inferred (C. C. 1796, 1798, 1805), and that the former not having required an imme-
diate reply, plaintiff's answer was within a reasonable time ; and that notice of plaintiff's
assent, though not given to defendant until the institution of suit, the latter having sus
tained no injury in consequence, is sufficient. The proposal in defendant's letter cannot be
considered void for want of consideration.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J.
T. R. *Wolfe*, for the appellant. *Randall*, for the defendant, contended
that there was no valid contract between the parties. C. C. 1791 to 1803. 6
La. 208. *Johnson* v. *Fessler*, 7 Watts 48. Chitty on Contracts (Am. ed.
1842), pp. 9, 10, notes 1, 2 ; p. 14, note 1. There was no consideration for
defendant's promise. Pothier, Obl. vol. 1, p. 46. The amount was to be paid
to plaintiff, after he had paid the judgment creditors. Plaintiff was already
legally bound to pay the debt ; and defendant was under no moral obligation to

RYDER
*v.*
FROST.

contribute, as between plaintiff and himself, any thing towards the settlement of the debt. The judgment of the court was pronounced by

SLIDELL, J. This suit is brought to recover $500, under the following circumstances. *Ryder & Frost* were commercial partners at Alton, Illinois. They failed in business. After the dissolution, *Ryder*, in 1841, undertook to settle the affairs of the concern; took the assets, and gave *Frost* a bond of indemnity to hold him harmless against all the partnership debts. Amongst other debts, the firm owed *J. & R. Leavitt*, of New York, a judgment debt of about $6,000. This debt had been compromised by *Frost* with their creditors, in 1839: but, in June of that year, they gave *Frost & Ryder* notice that they would attack the compromise for fraud. In 1843, a suit in chancery was instituted to that end, which resulted, in 1845, in a decree in favor of the *Leavitts*, reinstating their judgment.

Matters thus stood till the fall of 1845, when the *Leavitts* proposed to *Ryder* to compromise the $6,000 debt, by taking $2,000 in cash. *Ryder* then wrote to *Frost*, stating his sickness, inability, the desirableness of the compromise, &c.; and, after stating the disposition of the *Leavitts* to compromise, saying : " Now the object of this is to ask you that in case I make the settlement, whether you are willing to pay any part of this, or not. I will try to stand up to $1,000 and the costs, if you will stand the other $1,000. As the matter lays I think you ought to do it, and no doubt it will be for your interest to do it. You will not feel it like I do. If I can close this matter in this way, the next thing I shall do is, to try to settle with the bank. I probably shall have to give up my house and store to them for my debt; and then there is *Miller's* and *Hawkinson's* debt, neither of which has been settled for. I am determined to get clear of debt the next year, if I possibly can, if it takes every thing I possess. If I can do that, I can do some business somehow or other, and probably could give you commissions enough, in a few years, to remunerate your outlay for the settlements, which, without the settlement, I never can do. If you are not willing to do any thing, I shall have to let it take its chance; then I shall give up business entirely. I would be glad to hear from you on this subject as soon as convenient, as I wish to conclude the business as early as possible."

In answer to this letter, *Frost* wrote as follows :

" New Orleans, September 20, 1845.

" *Simeon Ryder, Esq.*, Alton, Illinois.

" *Dear Sir :* Your favor, under date 8th September, was received yesterday by mail, and contents duly noted. Am truly sorry to hear of your long and severe sickness, and so poor account of your business at Alton. I hope, ere this reaches you, that you will have so far recovered as to be enabled to attend to business, as you were wont to do.

" In relation to proposal for settlement of *Leavitts'* claims, you know full well my feelings about this matter. I have said I never would, from principle, pay a farthing towards the adjustment of their unjust demand. As for interest, I have none in the case. I care not for them, or any one else. I am independent—no family, but strong friends, thank God—and I am confident that I could conduct business here for years with that unjust execution over my head, without injury to my credit or standing. One thing I am certain of, they could never make a dollar upon it; and my friends here would support me in my decision. So much for so much ; but now to the point, I will not give $1,000 towards this settlement; but, in view of your trouble and sickness, and upon the grounds of friendship, growing out of our business particularly, I will give

you $500 to aid you in the liquidation of the demand ; the money to be paid as soon as the settlement is completed and duly erased from court documents and records. My partner is now in St. Louis. I have written to him to return home as it is entirely healthy. No yellow fever this season thus far. As soon as he returns, I shall pay you a visit; and then I will be prepared to check, if you desire."

It must be borne in mind throughout the investigation of this case that, the proposition made by *Frost* was clearly beneficial to *Ryder.* Without it, *Ryder* had no recourse at all against *Frost.* He was bound, under the indemnity, to pay the whole debt, without any contribution whatever from *Frost.* If he rejected *Frost's* propositions, the whole burden was on his own shoulders. There is nothing in the letter of *Frost* intimating his desire to have an immediate answer, and making it a requisite to being held to his offer. On the contrary, the terms of the letter indicate a disposition to afford *Ryder* a reasonable time to accomplish the desired object, and imply a continuance of the offer for a reasonable time. That proposition was also made in such terms as evinced, in the language of our Code, a design to give the other party the right of concluding the contract by his assent. In such a case, the party proposing is bound by his proposition, if the assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow. Civil Code, 1796. See also art. 1798. It seems, therefore, that there are only two points which we have to enquire into. *First,* was there an assent by *Ryder* to *Frost's* proposition, within a reasonable time? *Secondly,* was it indispensable that earlier notice of acceptance should have been given ?

It is not indispensable that the consent should be express. Civil Code, art. 1805. It may be implied. An implied consent may be manifested by actions. Ib. Here *Ryder* unequivocally manifested his consent. The letter of *Frost* was written on the 20th September, 1845. On the 10th November, 1845, the negotiations, which had been in progress during some time previous, are consummated. The object which *Frost* desired, and for the accomplishment of which he was willing to pay $500, was the satisfaction and cancellation of the *Leavitt* judgment; and this was promptly done. There being, therefore, a proposition and an assent, the obligation was complete. There was an *aggregatio mentium.* For it is not true to say, at least in all cases, that there must not only be an acceptance of the proposition, but a knowledge of the acceptance by the proposer. The authority of the Code is clear to this point. "If the party making the offer die before it is accepted, or he to whom it is made die before he has given his assent, the representatives of neither party are bound, nor can they bind the survivor. But, if the contract be accepted before the death of the party offering it, although he had no notice of it, the obligation is complete." Suppose A., living at the time in the city, and having a country seat at a distance, writes to B., who has an estate near his country seat, that " the large tree, at such a point on your farm, obstructs my prospect. Cut it down, and I will pay you $50." B., without further correspondence, cuts it down. Will any one say that there was not here an *aggregatio mentium*—a complete contract ? Clearly there was, and A. would be compelled to pay the money. See also the very able opinion of Marcy, J., in *Mactier* v.*Frith,* 6 Wendell, 111.

Next, was it indispensable, in the present case, that *Frost* should have had earlier notice ? We will suppose his letter was received on the 1st October,

RYDER
*v.*
FROST.

1845. The compromize was effected on the 10th November, 1845. The answer in this cause would seem to imply in its terms an acknowledgment that, *Frost* knew what *Ryder* had done before the institution of this suit. But take it that the suit was the first notice—that is, 1st August, 1846. Now what possible injury has *Frost* sustained by the delay? None whatever. There are many cases which will readily suggest themselves to the mind, where prompt notice of the acceptance of the proposition may be of serious importance to the proposer. But, even in such cases, the notice does not seem essential to the *aggregatio mentium*—the completeness of the obligation; but rather as pertaining to the question of its future binding force, which may be impaired, or even completely discharged, by the *laches* of the acceptor. It will be observed also in the present case that, there was no express requisition in the letter that *Ryder* should accept the proposition, or notify such acceptance, within a given time. See also Civil Code, art. 1798.

In conclusion, we believe the view we have taken of this case does not conflict with the Code, and that it is the practical one, resting on the reasonable expectations and intentions of the parties.

The charge of fraud against *Ryder* does not appear to us to be sustained by the evidence, nor do we think the promise contained in the letter void for want of consideration.

Judgment reversed, and judgment for plaintiff against defendant, for $500, and costs in both courts.