No. 11,018.

CONSUMERS ICE COMPANY VS. JACQUES TRAUTMAN & CO.

Where an ice dealer agrees with another to furnish him ice at certain prices until a pool is formed to advance prices, in which the latter is also to be a member, and the pool is formed, the contract is ended.

In the formation of the pool if acts are done, and resolutions offered, with which the party to whom the ice was to be sold does not agree and refuses to become a member, he can not hold the other party to the contract and make him responsible for the acts of the members of the pool.

In case the facts of the case are disputed, and leave the existence of the contract in doubt, we will not disturb, without urgent reasons, the judgment appealed from, as the district judge was in a favorable position, from seeing and hearing the witnesses testify, to ascertain the truth.

Consumers Ice Co. vs. Trautman & Co.

APPEAL from the Civil District Court, Parish of Orleans.
Rightor, J.

Francis B. Lee and Harry H. Hall for Plaintiff and Appellee.

Rice & Armstrong for Defendants and Appellants.

The opinion of the court was delivered by

McENERY, J.  The plaintiff company sued the defendants for $906.50, amount of ice sold and delivered to them from May 1 to June 20, 1890.

Defendants admit this indebtedness, but, assuming the position of plaintiff in reconvention, allege that plaintiff is indebted to them in the sum of $5288.75.  The reconventional demand is based on an alleged contract with plaintiff, by which the company was to furnish defendants with ice, some 1500 tons, at a certain price, and failing to do which, the defendants had to get ice elsewhere for their business, the extra cost of which, including waste in shipping and freight bills, amounted to the above amount.

The alleged contract was the result of several interviews between the president of the company and the defendants, which resulted in the agreement as alleged by defendants, that the plaintiff was to furnish ice to the defendants at $5 per ton, in stated amounts at certain dates, until a pool was formed, in which defendants were to be included.  Ice was furnished defendants at $5 per ton to the 10th day of June, 1890, after which the company declined to furnish it, except at market rates to large consumers.

The contention of defendants is that no circumstance has ever occurred to put an end to the contract, and that plaintiff was bound, under the same, to deliver ice at the rate of $5 per ton.

It was in contemplation that all the ice dealers would go into the pool.  Trautman & Co., the defendants, were as active as the rest in procuring its formation.  It was formed, and it seems a resolution was offered at the meeting to perfect the organization, that the dealers in natural ice should furnish their percentage in natural ice, whereupon Trautman & Co refused to enter the pool.

This action of the meeting is the ground for the argument that the contract to furnish ice at $5 per ton until the pool was formed still continued, as the president of the plaintiff company, who made the contract, was present and made no protest, or effort to oppose the proposition. It may be very true, as urged by defendants, that they had no interest after the adoption of the resolution to enter the pool. It would have been undoubtedly to their advantage to stay out, sell any quantity of ice above the percentage, at rates below the combination price.

The Consumers Ice Company would have been furnishing the means to defeat the object for which the pool was formed. It must have been known to defendants that the object of the combination was to advance prices, and its formation, with his consent, would annul his contract. The president of the Consumers Ice Company was not alone to fix the conditions of the membership. It was a future transaction of a body to be organized, in which defendants were to be participants.

They had as much voice as the president of the company in its organization. Its future deliberations were unknown, and its deliberations and conclusions could not be the acts of the Consumers Ice Company alone. It could not individually be held liable for the result of the organization and the conditions of membership. Each company engaged in the manufacture of ice went into it with expectations of procuring an advantage which was not accorded to it. The testimony shows that each was dissatisfied with the percentage allowed; yet the pool was formed and the contract as understood by defendants was ended.

To say that the refusal of defendants to go into the pool continued the contract alleged to have been made with them by the plaintiff would be to make the condition potestative, and therefore null and void. Civil Code, 2034.

In examining the mass of conflicting testimony in the record, we find only one agreement that can be construed into a contract between the parties. It was the memorandum on the back of an envelope, purporting to contain the agreement made by Joseph Trautman and handed to Phillippi, the book-keeper of the Consumers Ice Company, in the presence of the president of the company.

The contract was made in the year 1890, according to the statement of Trautman, at the request of the president of the company,

who informed him through the telephone that he wanted to make another contract with him in the event of the formation of a pool among the ice dealers of New Orleans. The memorandum on the envelope is the furnishing of ice, one-half over 40 per cent. of the percentage to be allowed defendants in the pool at the rate of $6 for June, July; $7 for August, September and October; $6 for November, December and January; $5 for February, March and April. If plaintiff could be held, it would be according to the terms of this contract, and the damages would be, not what defendants lost in freight and waste by melting, but the difference between the prices plaintiff agreed to furnish defendants and the market price in New Orleans.

The defendants have, however, not declared on this contract, but on one the existence of which is shrouded in doubt and uncertainty. We do not, therefore, feel authorized to disturb the finding of the district judge on disputed facts, as he was in a favorable position to enable him to ascertain the truth, by seeing and hearing the witnesses, an opportunity that is not presented to us. Under such circumstances we will not disturb the judgment appealed from, without urgent reasons. Chopoton vs. Creditors, 45 An.; Payne vs. James & Trager, 45 An., recently decided; Commission Co. vs. Bond & Williams, 44 An. 841.

Judgment affirmed.

Rehearing refused.