(110 So. 93)

No. 25942.

**CONQUES v. ANDRUS et al.**

(Oct. 5, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Corporations ⬳120.**

Contract of sellers of stock to repurchase after five years if buyer was dissatisfied *held* not invalid, under Civ. Code, arts. 2024, 2034, as containing potestative condition, in view of articles 2035, 2036.

**2. Constitutional law ⬳89(1).**

Parties may make any contract which is not contrary to law, public policy, or good morals.

**3. Contracts ⬳143.**

Person binding himself remains bound until discharged by law or released by consent of person to whom he is bound.

**4. Pleading ⬳49.**

Suit to enforce contract to repurchase stock *held* not one for damages because alleging that plaintiff had been damaged in sum claimed because of defendants' refusal to carry out contract.

**5. Corporations. ⬳120.**

Contract of sellers of stock to repurchase after five years if buyer was dissatisfied *held* not invalid because no term was fixed for its fulfillment, since it may be enforced within reasonable time, in view of Civ. Code, arts. 2038, 2050.

**6. Corporations ⬳120.**

Oral demand 14 days after expiration of five years, followed by written demand seven days later, *held* made within reasonable time within contract requiring seller of stock to repurchase after five years if buyer was dissatisfied.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Suit by John Conques against Mrs. Armand Andrus and others. From a judgment dismissing the suit on an exception of no cause of action, plaintiff appeals. Judgment set aside, exception overruled, and case remanded.

Mouton & De Baillon, of La Fayette, for appellant.

John W. Lewis, of Opelousas, for appellees.

THOMPSON, J. This appeal is from a judgment which dismissed the plaintiff's suit on an exception of no cause of action.

The suit is for the return of the purchase price of 167 shares of the capital stock of the Home Builders' Realty Company, amounting to $2,922.50.

The plaintiff purchased the stock by written act of sale dated June 21, 1917, from H. S. Gerson and Armand Andrus.

The act of sale concluded with the following provision and condition:

"And in consideration of said payment for said stock and the purchase thereof by the party of the second part, the parties of the first part do by these presents bind themselves jointly and severally, or either of them, to repurchase said stock represented by said certificate or any other certificate issued in its stead, at the same price for cash if the party of the second part is dissatisfied with the said stock, at any time after the expiration of five years from date; provided the said stock is tendered to either of the parties of the first part by the party of the second part individually or by letter, said tender to be sufficient as to the other party of the first part."

The petition alleges that Harry Gerson resides out of the state and that Armand An-

drus died on November 25, 1918, intestate, leaving a widow in community and four minor children as sole heirs of the community estate composed of movables and immovables. It is further alleged that the widow accepted the community with the benefit of inventory, and that said minors have accepted said succession with benefit of inventory by operation of law.

It is further alleged that on July 5, 1922, after the expiration of five years from the date of the purchase of said stock, petitioner, being dissatisfied with the said stock, gave notice of his election to return the stock and tendered the same, with demand for payment, to the said Calice Nedia Bernard, surviving wife in community and natural tutrix; that receiving no answer to said demand petitioner made a formal demand in writing upon the said widow and tutrix on July 12, 1922, to repurchase said stock, which demand was refused.

The prayer is for judgment against the widow individually for one half the price of said stock, and against her as natural tutrix for the virile share of each of the four minors, for the other half of said purchase price.

The exception of no cause of action is predicated upon two grounds which we take from brief of counsel for the defendants:

(1) Because the contract declared upon and sought to be enforced here contains a potestative condition and which renders the contract null and void under the Civil Code.

(2) Because the action is one sounding in damages instead of one for the specific performance of the contract declared upon.

[1] In support of the first ground, counsel relies on two articles of the Civil Code, one defining the potestative condition and the other declaring the effect of such a condition.

Article 2024 declares that the potestative condition is that which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder.

Article 2034 declares that every obligation is null that has been contracted on a potestative condition, on the part of him who binds himself.

The defendant's argument proceeds on the theory that every contract is null and unenforceable which contains a potestative condition depending solely on the will of one of the contracting parties, whether such party be the obligor or obligee.

While it is true the first quoted article defines a potestative condition to be one that is dependent on an event which is in the power of either of the contracting parties, the obligor or obligee, to bring about or to hinder, still, the second quoted article is explanatory of the first and clearly regulates the effect of such a potestative condition. This second article declares null and void as potestative only such contracts as are made to depend exclusively on the will of him who binds himself.

There is no prohibition and no nullity is pronounced against an agreement the execution of which by the obligor is made to depend on the will of the obligee or contractee.

And the reason for this difference in the effect of such a condition is: (1) That if the contract is made to depend solely on the will of the obligor there would be lacking a mutuality of obligation between the parties, without which no valid contract can exist; and (2) a contract by which a person assumes an obligation to do a certain thing and at the same time reserves to himself the privilege of electing not to execute is no contract at all.

This is not true, however, where the performance of an obligation is made to depend on the will of the party to whom the promise is made. In all such cases when the obligee in the exercise of the option granted him elects to have the obligation in his fa-

vor executed, the contract which until that event happens is suspended becomes a commutative, binding, and enforceable contract.

[2, 3] Parties are at liberty to make any kind of contract they see fit to make, and which is not contrary to law, public policy, or good morals. And it is a familiar principle that as a person binds himself so shall he be bound and remain bound until discharged by law or released by consent of the person to whom he is bound.

Neither the articles of the Code nor the jurisprudence of this state accord to an obligor the right to absolve himself from his obligation because the execution of such obligation is made to depend on the happening of an event which is within the power of the obligee to bring about or to hinder.

The conclusion we have reached is supported by article 2035, Civil Code, which declares that:

"The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."

And likewise by article 2036, which declares:

"An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration.

"Thus a lease may be made during the will of the lessor, and a sale may be made conditioned to be void, if the vendor chooses to redeem the property sold."

In the case of Amiss v. Wifting's Executors, 121 La. 501, 46 So. 606, 15 Ann. Cas. 379, a lease was entered into for a term of five years with the right of the lessee at any time during the term of the lease to purchase the property on the terms stated, in which event all unmatured rent notes could be canceled. The lessee informed the executors of the lessor, who had died, that he had elect-

ed to exercise the right to buy the property.

The executors declined to make the sale, and a suit to compel compliance with the contract was filed. The defense was that the option to purchase was a nudum pactum because without mutuality or consideration, but the court rejected the defense and enforced the contract. See, also, Murphy v. Hussey, 117 La. 390, 41 So. 692.

The cases above mentioned, and there are many more which might be cited to the same effect, are specially pertinent to the instant case.

The lessor in each of the cited cases bound himself unconditionally to sell the property leased at a fixed price at any time during the term of the lease if the lessee elected to purchase. The lessee elected to purchase, and the court enforced the contract.

The condition in those cases was clearly potestative, but was only so on the part of the lessee or obligee, and hence did not fall under the condemnation of the articles of the Code.

There can be no difference in principle between an obligation of an owner or lessor to sell during the lease, dependent on the will of the lessee to buy, and the obligation of a vendor to repurchase property sold if the vendee after a certain period of time is not satisfied with his purchase.

Counsel for defendants cite the case of Ice Company v. Trautman, 45 La. Ann. 775, 12 So. 930.

In that case the ice company agreed to furnish defendants ice at so much per ton until a pool was formed in which defendants were to be included. The pool was formed, but plaintiffs and defendants declined to enter it.

The price of ice advanced after the pool was formed, and the defendants insisted on plaintiffs delivering ice at the original agreed price, contending that nothing had occurred to put an end to the contract. The court held

that when the pool was formed the plaintiffs' contract with defendant was at an end.

In the course of its opinion the court said:

"To say that the refusal of defendants to go into the pool continued the contract alleged to have been made with them by the plaintiff would be to make the condition potestative, and therefore null and void."

If the pronouncement of the court were pertinent in that case it would not support defendant's position in this case, since the termination of the ice company's contract depended on the forming of a pool of the ice dealers.

The declination of plaintiff and defendant to enter the pool did not prevent its organization. If there was a potestative condition, it was not dependent on the will of the obligee.

The next case cited by defendants is Caddo Oil Co. v. Producers' Oil Co., 134 La. 701, 64 So. 684.

In that case a lessee under an oil lease had obligated himself to drill for oil under certain conditions. The lease concluded with a provision reserving to the lessee the right to abandon the leased premises whenever he desired to do so and to cease operations and to remove all property placed on the land by him at his discretion.

This was held to be a potestative condition which rendered the unexecuted part of the lease null and void.

As a matter of course, because the condition depended on the will of the lessee, the obligor.

Counsel have not cited and we have been unable to find a single case where a contract has been annulled as being potestative in its character where the condition of the execution of the contract depended on the will of the obligee.

[4] The second contention of defendant is that the action of plaintiff is for damages and not for specific performance and therefore the petition discloses no cause of action.

The petition does allege that the plaintiff has been damaged in the sum claimed on account of the refusal of defendants to carry out their contract. The suit, however, can hardly be characterized as an action in tort. The allegations and prayer of the petition clearly disclose an action to enforce the performance of a contractual obligation—to compel the defendants to take back the shares of stock and to refund to the plaintiff the price he paid therefor, all in accord with the written contract attached to the petition. The petition is not for that reason subject to the objection leveled at it.

[5, 6] Another contention made by the defendants is that the contract cannot be enforced because no term has been fixed for its fulfillment.

That a term cannot be said to be definitely fixed where the performance of the contract is to be "at any time after five years from the date of the contract."

Article 2038, Civil Code, provides that if there be no fixed time the condition may always be performed, and it is not considered as broken until it is certain that the event will not happen.

And article 2050 provides that where no term is fixed by the parties for the performance of the obligation, it may be executed immediately unless, from the nature of the act, a term either certain or uncertain must be applied.

The five years after which it was left to the plaintiff to elect as to whether he would keep the stock or return it to the vendors expired on June 21, 1922.

On July 5, 1922, the plaintiff notified the defendants that he was dissatisfied and demanded that defendants carry out their obligation to repurchase the stock. The demand was repeated in writing on July 12th.

We think this was within a reasonable time and fulfilled every purpose of the law.

In the case of Joffrion v. Gumbel, 123 La. 403, 48 So. 1012, this court said:

"No exact time having been fixed by the parties for the execution of that act, the law would assume that it should be done 'forthwith,' by which term is meant that it should be done within a reasonable time thereafter, as the parties were presumed to have contemplated this should be done."

The same rule is to be found laid down in Corpus Juris, vol. 14, p. 700, § 1077:

"Except where the time for performance of the contract is fixed by the terms thereof, the law implies that it may and shall be performed within a reasonable time."

Our conclusion is that the exception was improperly sustained.

The judgment·is set aside, the exception of no cause of action is overruled, and the case is remanded to the lower court to be proceeded with according to law.