## LA SALLE EXTENSION UNIVERSITY v. THIBODEAUX.*

### No. 14669.

Court of Appeal of Louisiana. Orleans.
May 21, 1934.

Weiss, Yarrut & Stich and Norman R. Tilden, all of New Orleans, for appellant.

Daly & Hamlin, of New Orleans, for appellee.

JANVIER, Judge.

LaSalle Extension University claims from Paul L. Thibodeaux $150, alleging that amount to be the balance due on a contract under which the said Thibodeaux agreed to receive and pay for a correspondence course in higher accountancy, to be sent to him by plaintiff. The University charges that the amount which Thibodeaux agreed to pay was to be sent to it in installments and that the contract provided that the failure to pay certain installments should mature the unpaid balance; that the unpaid balance is due; and that, in spite of the fact that it has tendered to Thibodeaux all of the written documents which constitute the course in higher accountancy, the said Thibodeaux has refused to accept them and has refused to pay the balance.

Thibodeaux interposes three defenses:

First, he alleges that at the time the contract was entered into he was required to execute, in addition to the contract, a note for $150, which was the unpaid portion of the tuition fee, and he contends that because of this plaintiff should have sued on the note and not on the contract.

Second, he seeks to show that the correspondence course was of no value and was not properly supervised by experienced professors and that, therefore, he was within his rights when he reached the conclusion that the course would be of no value to him, and that he was, therefore, justified in refusing to receive the documents constituting the accountancy course and in refusing to pay the balance which he had contracted to pay.

Third, by means of an exception of no cause of action filed at the close of the trial on the merits, he contends that the entire contract was a nudum pactum, containing a potestative condition, for the reason that, after the dispute arose, the plaintiff agreed that within thirty days of the satisfactory completion by Thibodeaux of the course, if he was not satisfied, he might return all papers and his diploma and receive back all amounts which he should by that time have paid.

In the city court the exception of no cause of action was maintained and plaintiff's suit was dismissed.

If the exception was properly maintained, then we need not devote ourselves to a consideration of the other two defenses, so we will first discuss the legal question pre-

*Rehearing denied June 11, 1934.

sented by the exception. It is directed at the fact that, after the contract had been entered into, plaintiff sent to defendant a document in printed form reading as follows:

"Money-Back Agreement

"LaSalle Extension University
"Chicago

"This is to certify that ———, having enrolled in the University, under Matriculation No. ———, is entitled to the full privileges of this LaSalle Extension University Money-Back Agreement under the following stipulations:

"Upon the fulfillment of the terms of enrollment and the receipt of written application by LaSalle Extension University and return of text material and diploma within one month after completing the regular work of the course, if the above member is not entirely satisfied with the high grade and practical character of the service and instruction as given under the provisions of the enrollment contract, and if not thoroughly convinced that full value has been received, the University will refund the full amount of tuition paid.

"[Seal]    LaSalle Extension University,
"Date ———    L. G. Elliott, Treasurer."

It is argued that since, in the so-called "Money-Back Agreement," plaintiff made it possible for defendant, if he should so elect, to receive back all of the money which he should have paid, the agreement was, in effect, an understanding that the defendant need not complete the course and need not make payment, if he did not care to do so, and that, thus, since the completion of the contract was made to depend upon the will of one of the parties, the contract itself was a nudum pactum. Article 2034 of our Revised Civil Code is called to our attention. This article reads as follows:

"Every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself."

In the first place, we notice that the money back agreement was no part of the original contract and that, therefore, at the time the parties entered into the agreement under which Thibodeaux was to pay the balance of $150 and the University was to send the lecture courses to Thibodeaux, the so-called potestative condition was no part of the said contract. We notice, also, that the so-called money back agreement does not stipulate that Thibodeaux shall have the right to any time to discontinue the course and to demand the return of his money, but

provides that this right shall exist only after he shall have completed "the regular work of the course." Even if the said condition, which defendant claims nullifies the contract, had been originally a part of it, it could not have been considered as such an agreement as would have made the entire contract null and void. The original contract required that the plaintiff should furnish to defendant the entire course and that the defendant should receive and complete the said course and make payment therefor. The rights under the other agreement did not come into existence until final completion of the course by defendant. In Conques v. Andrus et al., 162 La. 73, 110 So. 93, is found a case in which the legal question at issue was identical with that which we are now discussing. There the plaintiff, Conques, had purchased from defendant and another stock in a realty company, the agreement of purchase containing the stipulation that:

" * * * In consideration of said payment for said stock and the purchase thereof by the party of the second part, the parties of the first part do by these presents bind themselves jointly and severally, or either of them, to repurchase said stock represented by said certificate or any other certificate issued in its stead, at the same price for cash if the party of the second part is dissatisfied with the said stock, at any time after the expiration of five years from date; provided the said stock is tendered to either of the parties of the first part by the party of the second part individually or by letter, said tender to be sufficient as to the other party of the first part."

When suit was brought for the return of the purchase money under that portion of the agreement which we have above set forth, and an exception of no cause of action was interposed, supported by the identical argument which is made in the case at bar, the Supreme Court overruled the exception, and, in doing so, used the following language:

"Neither the articles of the Code nor the jurisprudence of this state accord to an obligor the right to absolve himself from his obligation because the execution of such obligation is made to depend on the happening of an event which is within the power of the obligee to bring about or to hinder.

"The conclusion we have reached is supported by article 2035, Civil Code, which declares that:

" 'The last preceding article is limited to potestative conditions, which make the obli-

gation *depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void.'*

"And likewise by article 2036, which declares:

" 'An obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration.

" 'Thus a lease may be made during the will of the lessor, and a sale may be made conditioned to be void, if the vendor chooses to redeem the property sold.'

"In the case of Amiss v. Witting's Executors, 121 La. 501, 46 So. 606, 15 Ann. Cas. 379, a lease was entered into for a term of five years with the right of the lessee at any time during the term of the lease to purchase the property on the terms stated, in which event all unmatured rent notes could be canceled. The lessee informed the executors of the lessor, who had died, that he had elected to exercise the right to buy the property.

"The executors declined to make the sale, and a suit to compel compliance with the contract was filed. The defense was that the option to purchase was a nudum pactum because without mutuality or consideration, but the court rejected the defense and enforced the contract. See, also, Murphy v. Hussey, 117 La. 390, 41 So. 692.

"The cases above mentioned, and there are many more which might be cited to the same effect, are specially pertinent to the instant case.

"The lessor in each of the cited cases bound himself unconditionally to sell the property leased at a fixed price at any time during the term of the lease if the lessee elected to purchase. The lessee elected to purchase, and the court enforced the contract.

"The condition in those cases was clearly potestative, but was only so on the part of the lessee or obligee, and hence did not fall under the condemnation of the articles of the Code."

The exception of no cause of action, for the reasons set forth, must be overruled.

■ The second defense is, as we understand it, that defendant came to the conclusion that the course was not so good a course and was not so well supervised as he had believed it would be. He bases this contention on the fact that when he answered the ques-

tions sent to him with the first installment, or first lesson, he inadvertently overlooked one of the questions, and that, in spite of this, he received a grade of A. He argues that, had his answers been carefully supervised, he could not have received so high a grade.

He labors under the impression that when the University graded his answers with the mark A, it intended to grade them as perfect. We do not think that this conclusion necessarily follows. The proof shows that the answers were very satisfactorily prepared and it may well be that the giving of the grade A did not mean that the professors who examined his answers thought that they were perfect, but merely that they were excellent.

Defendant also complains that in some of the correspondence sent him by the University were form letters complimenting him on his work and he contends that the only conclusion is that these form letters are sent out to all students who enroll and mean nothing at all. We do not think that this necessarily follows. The proof shows that many thousands of students enroll with this correspondence university and we see no reason why it should not have form letters prepared to be sent out in accordance with the requirements in each particular case. For instance, if two or three thousand students send in answers especially good, there is no reason why a form letter should not be prepared to be sent to all of them. On the other hand, another form letter would have been appropriate for those who did poorly.

■ The defense which we have numbered one is that, since, at the time the contract was executed, defendant also executed a note for the unpaid balance of the tuition fee, the suit should have been brought on the note and not on the contract. In the contract defendant agreed to accept the lectures and instructions and to pay for them, and, in connection with the contract, he executed a note to evidence the amount of the indebtedness. It was the contract itself which was breached and the note, which is in evidence, was merely the evidence to prove the amount of the indebtedness.

■ During the oral argument some question was raised as to the right of plaintiff to claim the full amount of the unpaid balance, the contention being that, since the claim is for damage for breach of contract, the loss is not necessarily represented by the entire unpaid balance. Plaintiff, however, has offered evidence which clearly shows that its

volume of business is so great that the cost of furnishing this instruction to one additional student is negligible. Thus, where one student, who has contracted for the course of instruction, refuses to accept it, the actual loss is represented by the amount which is due by the student. Furthermore, the entire course was tendered to defendant and all the expense to which plaintiff could be put was already incurred.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and there is now judgment in favor of plaintiff and against defendant for $150, with legal interest thereon from judicial demand and for all costs.

Reversed.