S. GUMBEL REALTY & SECURITIES CO., Inc., v. LEVY.*

No. 14753.

Court of Appeal of Louisiana. Orleans.

June 28, 1934.

*Rehearing denied Oct. 1, 1934. Writ of certiorari denied Nov. 26, 1934.

Monroe & Lemann and Robert G. Polack, all of New Orleans, for appellant.

Gus Levy, of New Orleans, for appellee.

JANVIER, Judge.

S. Gumbel Realty & Securities Company, Inc., was lessor, and Charles H. Levy, was lessee, in a written lease which contained the following stipulation:

"* * * Total destruction of the leased premises or building of which the leased premises form a part by fire or otherwise will not vitiate this lease, except at the option of the Lessor, but the Lessor shall have the option to reconstruct, and Lessee shall, at the option of the Lessor, resume occupancy immediately upon reconstruction, and Lessee shall be entitled simply to a credit for the period during which the Lessee shall have been excluded and the period during which the exclusion shall have been continued. Notice of the exercise of said option to rebuild shall be given by Lessor within thirty days after the fire or other casualty."

The premises leased were the fourth floor of a building on Canal street. The term of the lease was twelve months commencing October 1, 1931, and terminating September 30, 1932. The monthly rental was fixed at $105.

On January 11, 1932, a fire occurred, and though the building was not destroyed, the interior of the fourth floor and the roof above were so badly damaged that it is conceded in that effect "there was a total destruction of the leased premises."

On January 29, 1932, within the thirty-day period fixed in the last sentence of the above-quoted stipulation, the lessor, in writing, notified the lessee of intention to reconstruct, and on March 7, 1932, again notified the lessee that the reconstruction had been completed and that liability for rent would commence on the following day, March 8, 1932.

On March 17, 1932, through counsel, the lessee denied any further liability under the lease, claiming that at the time of the fire the lease had been completely terminated for two reasons. These reasons, as stated in the letter sent by counsel for lessee to the lessor, are as follows:

1. "* * * It is my opinion, and I have so advised my client, that the stipulation in clause 3 of your lease with Charles H. Levy, dated May 22nd, 1931, whereby the lessee is obligated to resume occupancy immediately upon reconstruction of the building in the event of a fire which totally destroys the premises, at the option of the lessor, is purely potestative, and, in my opinion is not binding under the laws of this State."

2. "Even in the event that the above clause is binding, which we especially deny, the lessee has made a careful inspection of the premises and finds them not to be reconstructed in the same manner in which they were before the fire."

On April 6, 1932, this suit was filed, plaintiff lessor claiming rent from March 8th, the day on which it is contended the reconstructed premises were ready for occupancy, to September 30, 1932, the conventional end of the term of the lease.

Defendant lessee answered denying any liability for rent after the date on which the fire occurred and, by way of reconventional demand, praying for a judgment canceling the lease as of that date.

In the district court there was judgment for defendant and plaintiff in reconvention dismissing the suit of the plaintiff on the main demand and canceling the lease in accordance with the prayer of the plaintiff in reconvention.

Although we note in the brief of lessor several statements to the effect that the defense that the lease is annulled because of

a potestative condition "was abandoned on the trial," we also note that when the matter was argued before us both counsel devoted much time to a discussion of this phase of the controversy and we find in both briefs many pages addressed to it.

■ The first ground of defense—that the lease contains a potestative condition—is based on two articles of the Civil Code, arts. 2024 and 2034, the first of which defines a "potestative condition" as one "which makes the execution of the agreement depend on an event which it is in the power of the one or the other of the contracting parties to bring about or to hinder," while the other article, 2034, provides for the nullity of contracts containing such potestative conditions, declaring that "every obligation is null, that has been contracted, on a potestative condition, on the part of him who binds himself." It will be noted that a condition or stipulation is not necessarily destructive of the contract merely because it is made to depend upon the will of one of the parties, but that it has such effect only if it is the obligor who reserves the right to determine whether he shall or shall not act. In other words, a condition is potestative to the extent that it nullifies a contract only if it is left to the decision of the obligor. If A contracts to do a certain thing if B decides to require it to be done, then that condition does not nullify the contract. On the other hand, if A agrees with B that A will do a certain thing if A sees fit to do so, that condition does nullify the contract because the doing of the thing is left entirely to the decision of him by whom the thing is to be done. In other words, to use the language of article 2034, the decision is left to the will "on the part of him who binds himself."

The distinction between the obligor and the obligee is well illustrated in the case of Conques v. Andrus, 162 La. 73, 110 So. 93, 94, in the following paragraphs:

"The defendant's argument proceeds on the theory that every contract is null and unenforceable which contains a potestative condition depending solely on the will of one of the contracting parties, whether such party be the obligor or obligee. * * *

"There is no prohibition and no nullity is pronounced against an agreement the execution of which by the obligor is made to depend on the will of the obligee or contractee.

"And the reason for this difference in the effect of such a condition is: (1) That if the contract is made to depend solely on the will of the obligor there would be lacking a mu-tuality of obligation between the parties, without which no valid contract can exist; and (2) a contract by which a person assumes an obligation to do a certain thing and at the same time reserves to himself the privilege of electing not to execute is no contract at all.

"This is not true, however, where the performance of an obligation is made to depend on the will of the party to whom the promise is made. In all such cases when the obligee in the exercise of the option granted him elects to have the obligation in his favor executed, the contract which until that event happens is suspended becomes a commutative, binding, and enforceable contract. * * * .

"Neither the articles of the Code nor the jurisprudence of this state accord to an obligor the right to absolve himself from his obligation because the execution of such obligation is made to depend on the happening of an event which is within the power of the obligee to bring about or to hinder."

See, also, LaSalle Extension University v. Paul L. Thibodeaux, 155 So. 53, of this court, decided May 21, 1934.

■ The lease we are considering was a most unusual one in the respect set forth. The parties could have omitted any reference to the effect of the destruction of the premises by fire, and had they done so the law itself would have fixed their respective rights in the contingency which later confronted them.

Under Civil Code, art. 2697, the lease would have been dissolved by the destruction of the thing leased, for in that article it is provided that "if, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end." But the parties were within their rights in stipulating for the recommencement of the lease after reconstruction. There is nothing contrary to public policy or good morals in such a stipulation, and in Conques v. Andrus, supra, we note the following:

"Parties are at liberty to make any kind of contract they see fit to make, and which is not contrary to law, public policy, or good morals. And it is a familiar principle that as a person binds himself so shall he be bound and remain bound until discharged by law or released by consent of the person to whom he is bound."

The lessor was unwilling to grant a lease unless it contained a stipulation that it should continue in existence if the lessor decided to reconstruct after total destruction, and it must be assumed that in fixing the rental value of the property consideration

was given for the privilege of retaining the option to reconstruct in the event of destruction. Thus the right which was given to lessor did not constitute a potestative condition but an optional condition.

In New Iberia Sugar Co., Ltd., v. Lagarde, 130 La. 387, 58 So. 16, 17, is found a case which we believe cannot be distinguished in legal principle from the case at bar and which applies still another principle relative to potestative conditions, which principle is set forth in Civil Code, art. 2035, and reads as follows:

"The last preceding article is limited to potestative conditions, which make the obligation depend solely on the exercise of the obligor's will; but if the condition be, that the obligor shall do or not do a certain act, although the doing or not doing of the act depends on the will of the obligor, yet the obligation depending on such condition, is not void."

In the New Iberia Sugar Company Case, the Sugar Company and defendant, a cane grower, entered into a contract under which the Sugar Company agreed to buy and the cane grower agreed to deliver, during a fixed term, all sugar cane produced by the grower on his plantation. The contract, along with other stipulations, contained one which, according to the Supreme Court's decision, provided that:

" * * * In the event of an accident, such as fire or breakdown, disabling the factory for the season, it was to become null to the extent of the season's operations, but this was not to release defendant from his obligations for the remaining years of the contract if the plaintiff rebuilt its factory; but, if plaintiff did not rebuild, the whole contract would be at an end and null."

It was contended that the contract contained a potestative condition, in that in the event of destruction of the mill the option to rebuild and to thus continue the contract was left to the will of the officials of the sugar company. The court said:

"We are of opinion that plaintiff did not limit its obligation at will. The provision was that in case of the loss of its refinery by fire it would be entitled to relief, even to the extent of terminating the contract. The conditions were to be performed except in case of loss by accident. The accident was the cause that might suspend execution of the contract on plaintiff's part, and not the will of the plaintiff. The obligation, in consequence, did not depend solely on the exercise of the obligor's will. 2035, Civil Code.

"A stipulation prompted by prudence may be inserted in a contract for the purpose of protection against loss of a refinery or other improvements without subjecting that contract to the potestative condition of the article cited above. If it becomes a hardship to comply with a condition caused by a loss occasioned by a vis major, it is not the will that is to determine the term of the contract, but it is the accident."

Counsel for defendant sees a distinction because of the fact that in the Sugar Company Case the controversy did not arise as a result of the destruction of the sugar mill. The cane grower sold his plantation and did not require his vendee to assume his obligation to furnish cane to the Sugar Company and the Sugar Company brought suit against the former owner for damages. As a defense the former owner urged the nullity of the contract because of the condition referred to. The court held that it was not potestative to the extent of nullifying the contract. We are unable to see the distinction urged by counsel for defendant.

The thought that that condition is not potestative which depends on the will of the obligee, but only that is potestative which depends on the will of the obligor, is further presented in article 2036 of the Civil Code which, in part, provides that "an obligation may also be made, by consent of the parties, to depend on the will of the obligee for its duration."

Both articles 2035 and 2036 are referred to in Conques v. Andrus, supra, the court declaring that the conclusion reached in that case is supported by those articles.

We conclude that the stipulation relied on by defendant for the nullity of the contract is not a potestative condition within the contemplation of the articles of the Code referred to, and we thus pass to a consideration of the defense that the premises were not reconstructed in accordance with their original condition and arrangements.

According to the brief of counsel for defendant, there were several particulars in which changes in condition and arrangement were made in the reconstruction of the premises. The contractor testified that he was somewhat familiar with the condition and arrangement of the premises before the fire and that he had made a careful inspection afterwards, and that he had undertaken to reconstruct everything as nearly as possible in accordance with the original arrangements. The complaints of Mr. Levy do not impress us with the sincerity which should be found

where an attempt is made to abrogate and nullify an otherwise valid contract of lease. For instance, a few quotations from his testimony will serve to show that though he complained vehemently that one of the toilets and one of the washstands, which were in the premises prior to the fire, were not replaced, he evidently had a very faulty recollection of the number of toilets and washstands that were in the premises before the fire. We quote from his testimony. Referring to the number of toilets prior to the fire, he was asked how many were there all together. He answered, "I think five." He was asked how many urinals, and answered, "I never counted them." He was further asked how many toilet fixtures were in the ladies' lavatory, and he answered, "There were two of them in there I believe." Later he was asked how many toilets there were, and he answered, "To the best of my recollection, I counted three." When asked if he was certain of this, he said: "Three or four; I know it is not over four." We quote this testimony merely to show that he, himself, was most uncertain as to the toilet and lavatory fixtures prior to the fire.

His testimony that certain gas heaters had been replaced without ventilators is not persuasive, because the record leaves us rather well convinced that such ventilators had not been attached to the heaters in the first instance.

His complaint as to the skylight is equally without foundation. The record shows that the new skylight is larger than the former and is so constructed as to permit more light and more air.

The complaint as to the fact that the partition after reconstruction was entirely of wood, whereas the former one had been of glass in the upper portion, is sustained by the evidence.

Likewise it is shown that in a slight degree the partitions around the toilets were rearranged. These two facts we shall later discuss.

The only complaint of any substantial importance results from the fact that, prior to the fire, there were in the premises more electric circuits than afterwards and this presents an interesting question. There is no doubt in our minds that after the lessee entered the premises at the commencement of the lease he caused to be installed for the use of his peculiar and particular business additional electric circuits and that he, himself, paid for the installation. There seems to be equally little doubt that under the terms of the lease these circuits immediately upon installation became the property of the lessor, since the lease provided that:

"All repairs, alterations, additions or improvements, fixtures, attachments or appurtenances placed in or on the premises by the lessee to be made only by and with written consent of lessor and becomes at once, without compensation or reimbursement, the property of lessor, unless otherwise stated herein."

Mr. Levy, defendant, contends that since the circuits had become a part of lessor's building and had become lessor's property it was lessor's legal duty, under the lease, to replace them upon reconstruction of the building, and the argument is made that since the premises were tendered to lessee after the fire without these circuits he was under no duty to accept them. There may be some doubt as to whether or not these circuits became the property of the lessor. The record shows that the lessee, in settling with his insurer for his loss, included in his proof of loss claim for "electric wiring, $375.00," but the view which we take of the matter renders it unnecessary that we reach a conclusion on this phase of the controversy because, even if the circuits did become a part of the building, still we believe that plaintiff should recover. We shall, therefore, treat the circuits as if plaintiff could have been required to replace them and shall place them in the same category with the improper partitions and the changes with reference to the arrangement of the enclosures around the toilets, and shall consider the matter as though in those three particulars the premises now differ from the condition in which they originally existed.

▇▇ There can be no doubt that it was the lessor's duty to reconstruct the premises as nearly as possible as they were before the fire. There is equally no doubt that lessor had no right to make changes even though these changes might have been considered by lessor or his contractor as beneficial to the tenant.

In Wood v. Monteleone, 118 La. 1005, 43 So. 657, 660, the Supreme Court said:

"Defendant is not the proper party to decide whether the alterations made by himself were beneficial to the plaintiff or were deemed by her desirable. It is for the plaintiff herself to deal with that question. Even advantageous changes cannot be forced upon her without her consent. Sharpe v. Levert, 51 La. Ann. 1249, 26 So. 100; Succession of

Kernan, 105 La. 604, 30 So. 239; Voiers v. Atkins, 113 La. 332, 36 So. 974."

But there are two things of which we cannot lose sight, and they are that manifestly the plaintiff did everything it could to reconstruct the premises and to replace all fixtures and additions of which it had knowledge, whereas the defendant steadfastly refused to render any assistance in determining how the partitions and fixtures should be replaced.

While it is true that a lessor may not rearrange his building without the consent of the lessee, that principle does not require that such differences as may have existed after the reconstruction must necessarily have the effect of automatically annulling the lease.

The lessee cannot remain silent, allow the work to proceed, refuse to tender advice and assistance, and then refuse to accept the premises on the ground that changes have been made.

Even if the lessee had not refused to render assistance in determining how the reconstruction work should be done, still, in view of the fact that the lessor made every effort to replace the premises just as they were before the fire, the effect of such changes as were made here would not have been the immediate and automatic cancellation of the lease. Rather would these changes have given to lessee the right to demand that they be eliminated and that everything be replaced as it had been. Then, had the lessor refused to comply, a different question would have been presented.

The testimony of Mr. Levy indicates plainly that he was absolutely unwilling to give assistance or advice, or even to state that he intended to reoccupy the premises regardless of perfect reconstruction. His entire testimony on this point is most evasive.

After the occurrence of the fire the lessor, within the thirty-day period fixed in the lease, notified the lessee of its intention to rebuild. The lessee was, at all times, aware of the fact that work was in progress. He knew that it was being done for his use. He knew that better than any one else, he, who had been occupying the premises, was familiar with their condition and with his own needs, and that neither the lessor nor the contractor knew as intimately as he of the particular requirements of his business and the additions and changes which had been made for his particular purposes. He should have divulged that information. At any rate, he should have demanded a correction of what he considered defects or changes before attempting to use these same defects or changes as a means of annulling the lease.

There is evidence which indicates that the lessee, immediately after the occurrence of the fire, made plans for the securing of other permanent quarters and had no intention of again occupying those of lessor, and, in a plea of estoppel, we are urged to hold that as a result of that fact, lessee may not now assert that the premises were not tendered to him in the condition in which they should have been.

The view which we take of the matter makes it unnecessary that we pass on the plea of estoppel. We feel that the lessor is entitled to be paid rent from the day on which the lessee should have reoccupied the premises until the completion of the conventional term of the lease.

We find that by eliminating the first seven days of March the balance due for that month would be $81.29, and for the remaining six months of the lease at $105 per month there would be due $630. Therefore, the total amount then due was $711.29. Since the lease stipulates for interest on overdue amounts, and since it also stipulates for the acceleration of payments upon default in one payment, and since it also stipulates for attorneys' fees, these items also must be allowed.

After defendant had refused to take over the premises after reconstruction, plaintiff, in order to minimize its damages, found it possible for a portion of time to lease the premises to another tenant and did so; the total rent received being $137.50. Of course, defendant is entitled to a credit for this amount.

It is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment dismissing the reconventional demand. It is further ordered that there be judgment on the main demand in favor of plaintiff, S. Gumbel Realty & Securities Company, Inc., and against defendant, Charles H. Levy, in the sum of $711.29 with interest at the rate of 8 per cent. from April 1, 1932, until paid together with attorneys' fees of 10 per cent. on the total amount of principal and interest, subject, however, to a credit of $137.50, and for all costs.

Reversed.