KENNON, Judge.
The petition of the Air Conditioning Training Company set forth that it was an ordinary partnership composed of two residents of Youngstown, Ohio, and that defendant had entered into a written contract wherein he had agreed to pay plaintiff $224.50 in consideration of plaintiff’s furnishing a correspondence course in air conditioning training, and that a balance of $162.50 was still due.
Defendant filed an exception of no cause or right of action which was referred to the ■merits. After trial, judgment was rendered rejecting plaintiff’s demands, and the case is before us on plaintiff’s appeal from that judgment.
On January 6, 1945, defendant signed a form letter prepared by plaintiff and addressed to itself, wherein he agreed to pay $224.50, plus a laboratory fee of $10, in consideration of which he was to receive nine specifically listed benefits, listed and summarized as follows:
“1. A Complete and Thorough training course in both practice and theory, consisting o.f 105 assignments of Home Study instruction, covering the following divisions: Commercial and Domestic Refrigeration (Gas and Electric), Commercial and Domestic Air Conditioning, Estimating, and Product Conditioning.
“2. The privilege of securing a Post Graduate course of two weeks of intensive and practical Shop training in your modern equipped Shop at Youngstown, Ohio, after graduating from home study course.
“3. The tuition includes bus transportation from the bus station nearest my present address to Youngstown and return. A. C. T. C. will arrange for this transportation prior to my trip to Youngstown.
“4. I further understand that my tuition fee includes the cost of board and room at a place designated by the Training Company during my attendance at the Shop training at Youngstown, Ohio.
“5. Individual instruction and attention supervised by graduate engineers.
“6. Consultation service supervised 'by competent engineer during course o,f training and after graduation.
“7. When I am ready to come to the laboratory (provided not less than Yz of the tuition has been paid) if I so desire the Training Co. will arrange to have the unpaid balance financed, repayment to be made in monthly installments after graduation plus a carrying charge of 7%.
“8. A sincere and conscientious placement service after graduation. Your placement department will contact distributors, dealers and service organizations in whatever section of the United States that I designate to stimulate interest in my placement. This includes permission to use employment department of the Training Company for a reference at any time. There is no time limit on this service. I can use it whenever I desire after graduation and as long as I wish. I further understand that Employment Cannot Be Guaranteed Or .Promised.
“9. I am to receive your Student News and Technical Bulletin issued monthly.”
Defendant paid $20 at the time of the execution of the contract and $6 a month for the first seven months of 1945.
Only one witness was introduced by plaintiff. This witness identified the contract and testified that 26 of the 105 lessons-had been sent to defendant; that defendant had completed 10 of these lessons and that defendant had paid $62 only of the $224.50' due under the contract. The statement introduced by plaintiff shows that the other 16 lessons were returned unsolved by the student.
The plaintiff did not introduce any testimony that it prepared all 105 of the lessons-set -forth in the contract, or tendered the remaining lessons to the defendant, nor did *667 plaintiff offer proof that it had available the “modern equipped shop at Youngstown, Ohio,” specified in paragraph 2 above and the “competent engineers” mentioned in paragraph 6, or that the volume of business -enjoyed by plaintiff was such that the cost of furnishing the instruction and training to one individual student was negligible.
The defendant testified that he had not received the post graduate course o-f two weeks in the shop at Youngstown, Ohio provided in paragraph 2 quoted above; that no bus transportation had been 'furnished him as provided in paragraph 3 quoted above, or room and board furnished as provided in paragraph 4 quoted above.
Under the circumstances above set out, the case is distinguishable from the case of LaSalle Extension University v. Thibo-deaux, La.App., 155 So. 53, cited by counsel for plaintiff, where there was proof that the plaintiff had already gone to the full expense required of it in -furnishing the student with all the services included in the course of study contracted for, and that its volume of business was so great that no additional expense would have been incurred had the defendant been furnished all the lessons and services called for in his contract. In the LaSalle -case there was apparently no contract to furnish su-ch physical services as bus transportation, room and board, practical shop training, and personal expert supervision.
Section 591, under Contracts-, 17 Corpus Juris Secundum, page 1233, provides : “The burden is on plaintiff to establish the elements measuring the amounts of 'his recovery * *
This rule was -followed in Louisiana in the -case of Long v. Charles Kaufman Co., Ltd., 122 La. 281, 47 So. 606, 607. In that -case the defendant -breached a contract to use a delivery service operated by plaintiff. Plaintiff failed to prove any actual damage and the Court held, “plaintiff, however, not having proved any damages, cannot recover any.” A similar holding by the Louisiana Courts is found in the case of Shreveport Ice & Brewing Co. v. Brown, 128 La. 408, 54 So. 923.
Having found that the plaintiff did not prove any damage as a result of defendant’s failure to continue the course, the judgment of the District -Court rejecting plaintiff’s demands is affirmed, with costs.