YARRUT, Judge.
Defendants appeal from the judgment of the District Court recognizing Relators as owners of the shares of the capital stock of Defendant Southland Fishing Tools, Inc., now held by Defendant Commercial Services, Inc.
For brevity, reference herein to Sokol will be to Relator Wm. D. Sokol, former President and majority stockholder of Southland Fishing Tools, Inc.; and South-land Fishing Tools, Inc., will be referred to as “Southland.” Defendant Louisiana Factoring Corporation will be referred to as “Factoring Corporation,” and Defendant Commercial Services, Inc., as “Commercial.”
Relators brought this action as a quo warranto proceeding under LSA-C.C.P. Art. 3901 to remove the individual Defendants as corporate officers of Southland; to have themselves recognized as such; for delivery to them of the books and records of Southland; and to recover from Defendant Commercial the shares of capital stock in Southland, which Relators charge *206 Commercial had obtained from them by coercion, duress, threats of foreclosure and without any consideration.
The gravamen of Relators’ complaint is that Relators were compelled by Defendants to transfer their majority shares of stock in Southland to Commercial, an alleged subsidiary of Factoring Corporation, without any consideration therefor, but solely by threats and duress of foreclosing a chattel mortgage for $147,360.53 held by Factoring Corporation on the tools, equipment and other property of Southland.
The District Court held:
“The Court holds that for lack of consideration, the stock transfers by Relators were invalid to the extent that they did not convey ownership of the stock involved. The Court further holds that these transactions were valid to the extent that they did convey voting rights. * * * ”
Relators urge here for the first time the further cause that, if the transfer of their shares to Commercial was a sale and not a pledge, then such transfer was null and void because it was subject to a potestative condition. The facts established by the testimony and documentary evidence are:
Pursuant to a written agreement, Factoring Corporation on February 19, 1957, acquired from Southland a large number and amount of open accounts.
When Factoring Corporation failed to receive the normal remittances from the assigned accounts, they, in March 1958, contacted Mr. Sokol of Southland, and threatened to contact the debtors direct. To avoid this embarrassment, Sokol agreed to and did re-acquire the accounts from Factoring Corporation, for which South-land gave Factoring Corporation four postdated checks for a total of $171,291.41, the first for $26,005.53, payable March 30, 1958. When deposited by Factoring Corporation payment of the first check was refused for want of sufficient funds.
An officer of Factoring Corporation then contacted Mr. Sokol, and again threatened to contact the debtors. Sokol then confessed he had defrauded Factoring Corporation by collecting the accounts and not remitting to Factoring; and that many of the assigned invoices were non-existent and fictitious. To make amends Sokol, as President, on March 24, 1958, executed Southland’s note for $162,577.56, and endorsed it personally. In addition, and in writing, he transferred and endorsed his shares of stock in Southland to Factoring Corporation in blank.
Sokol contends this endorsement in blank and the delivery of his stock was, at most, a pledge and not a transfer of title. While this transfer was absolute and without restriction, we can pretermit this issue because of the subsequent events.
Factoring Corporation concluded that Southland’s unsecured note of March 24, 1958, for $162,577.56 was worthless, so insisted upon and obtained a chattel mortgage on April 17, 1958 for $147,360.53 on all the tools, equipment and other movable property of Southland, executed by Mr. Sokol as President. Shortly thereafter, in July 1958, an audit was made of Southland showing it to be insolvent. Sokol then sought outside financial assistance for Southland, without avail. It was then that Sokol and the other Relators, by separate written instruments, transferred title to their respective shares of stock in South-land to Commercial under the conditions and for the consideration, as follows:
“In order to induce Commercial Services, Inc., a corporation chartered under the laws of the State of Louisiana, to assume the responsibility of active management and to generally supervise and further promote the operations of Southland Fishing Tools, Inc. I, the undersigned, hereby transfer unto Commercial Services, Inc. - shares of the Capital Stock of Southland Fishing Tools, Inc. standing in my name on the books of *207 said Southland Fishing Tools, Inc., represented by certificate number -herewith, and do hereby irrevocably constitute Andrew P. Carter, attorney to transfer said stock on the books of Southland Fishing Tools with full power of substitution on the premises.
“In consideration of this transfer, it is understood that at such time as the net book value of the common stock of Southland Fishing Tools, Inc. equals one dollar ($1.00) per share as may be determined by generally accepted accounting practices, the undersigned is to receive from Commercial Services, Inc.-shares of its Class A voting common stock of a par value of one dollar ($1.00) per share.”
After the transfer of their respective shares as aforesaid Relators remained as Directors and Officers of Southland until March 4, 1959, when they resigned following a demand upon Southland that it pay the outstanding mortgage note due Factoring Corporation, which Southland could not do. On March 16, 1959, the shares of Relators were then transferred on the books of Southland to the name of Commercial, which spent thousands of dollars conducting Southland’s business, including paying delinquent taxes.
The transfer by Sokol of his 53% of the shares of Southland, along with the other Relators, to Commercial Services, Inc. in effect superseded his previous transfer and endorsement in blank to Factoring Corporation, who, by its participation therein, ratified the same, unless the latter transfer is nullified on the ground it was burdened with a potestative condition. Relators contend that the transfer of their shares in Southland to Commercial was void since Commercial had the power to mismanage the corporation’s affairs and thereby prevent its shares ever becoming worth $1.00 per share.
When Relators in August and September, 1958, transferred all their shares in Southland to Commercial, Southland was insolvent, yet for such worthless shares they were to, and did, receive financial assistance, management assistance, and an opportunity to save part or all their respective investments in Southland in the form of common stock in Commercial should Southland be rehabilitated in the manner stated in the purchase agreements.
As the value of the shares were to be determined, not by Commercial, but by accepted accounting standards (necessarily implying competent accountants) and since the mismanagement of Commercial would be detrimental to its own interest, such a condition cannot be held to be potestative. Colbert v. District Grand Lodge No. 21, La.App., 178 So. 694; S. Gumbel Realty & Securities Co. v. Levy, La.App., 156 So. 70; Anse Le Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 So. 754.
Furthermore, there is no charge that Commercial was guilty of fraud or mismanagement of Southland’s affairs in order to prevent Relators obtaining Commercial’s shares as recited in the agreements.
In open court here, without objection, corroborated by certified copies of the pleadings in the record, counsel argued that in a pending foreclosure proceeding by Factoring Corporation in the District Court to satisfy its chattel mortgage against South-land, the Relators here intervened (under a claimed stockholders’ derivative right) to defeat the foreclosure, contending South-land’s Board of Directors had not authorized the chattel mortgage, and that it was obtained by fraud. Strangely enough, Relator-Sokol represented the Corporation as President in the execution of this alleged unauthorized chattel mortgage.
Even if the transfers by Relators to Commercial were annulled on the ground they contained a potestative condition, tire original assignment by Sokol of his 53% majority shares to Factoring Corporation, whether held an outright transfer or only a pledge, would still entitle the Factoring Corporation to vote said shares until its *208 chattel mortgage indebtedness is satisfied, under La. Uniform Stock Transfer Act, LSA-R.S. 12:501, and LSA-R.S. 12:522 through LSA-R.S. 12:524.
Under the facts and circumstances, we are constrained to hold that the respective transfer of their shares of stock by Rela-tors to Commercial is valid and binding, supported by valid consideration; and that Relators’ demands to recover the shares, and for the other relief, are not well-founded and their suit should be dismissed'.
For the reasons assigned, the judgment of the District Court is reversed, and judgment rendered in favor of Defendants-Rela-tors and against Plaintiffs, dismissing the latters’ suit, at their cost in both Courts.
Reversed.