(48 South. 144.)

No. 17,248.

SHREVEPORT TRACTION CO. v. MUL-
HAUPT.

In re SHREVEPORT TRACTION CO.

(Nov. 16, 1908.  Rehearing Denied Jan. 18,
1909.)

1. CONTRACTS (§ 22*) — OFFER AND ACCEPT-
ANCE—ACCEPTANCE BY ACTS.

Action, without words, is presumptive evi-
dence of the acceptance of a proposition, when
taken under circumstances that naturally imply
such acceptance, and a timely suit, brought on
the contract alleged to have resulted from a
proposition and its acceptance, may in itself be
an acceptance of the proposition.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 71–79; Dec. Dig. § 22.*]

2. CONTRACTS (§ 22*) — OFFER AND ACCEPT-
ANCE—IMPLIED ACCEPTANCE.

Where a number of persons make, to a
railway company, the proposition, "If you will
build a railroad, along a certain route, on a
certain grade, at your own expense, we will pay
you certain sums when the rails are laid, or
within 30 days after you begin operating the
road," and the company at once builds the road
in accordance with and in acceptance of the
proposition, and thereafter operates it in ac-
cordance with other conditions contained in
such proposition (with respect to fares and
schedules, to be thereafter maintained), the ac-
tion thus taken, considered in connection with a
suit brought to recover the sums offered, amounts
to an implied acceptance of the proposition, and
the company is entitled to judgment in the suit
so brought.

[Ed. Note.—For other cases, see Contracts,
Dec. Dig. § 22.*]

(Syllabus by the Court.)

Action by the Shreveport Traction Com-
pany against J. T. Mulhaupt. Plaintiff had
judgment, which was reversed by the Court
of Appeal, and plaintiff applies for certiorari,
or writ of review, to the Court of Appeal.
Judgment of the Court of Appeal reversed,
and judgment of the district court affirmed.

Wise, Randolph & Rendall, for applicant.
Alexander & Wilkinson, for respondent.

Statement of Case.

MONROE, J.  Defendant and other citi-
zens of Shreveport, desiring to have an elec-
tric railroad along a certain route to the
Fair Grounds, made a proposition in writ-
ing to pay, each, a certain sum of money as
a bonus if plaintiff would build and operate
such road agreeably to the conditions men-
tioned in the proposition.  Thereafter plain-
tiff, having satisfied the district court that
it had done all that was required in order
to entitle it to the amount ($2,000) offered
by defendant, obtained judgment against
him therefor, and, the judgment so obtained
having been reversed by the Court of Appeal,
plaintiff now prays that the ruling last men-
tioned be reviewed.

The "proposition, in writing," above re-
ferred to, reads in part, as follows:

"Shreveport, La., June 7, 1906.
"Shreveport Traction Co.

"Gentlemen: If you will construct an elec-
tric railway along the following route, namely
[giving the route], the undersigned, in consid-
eration of the improved facilities for reaching
the city of Shreveport, the Fair Grounds, and
points intermediate, on, or near said line
* * * hereby agree to pay, promptly, on the
completion of the laying of said tracks, the
amounts set opposite our names, below, the fol-
lowing conditions being those upon which the
railway is to be built and operated.

"Conditions.

"(1) A bonus of $15,000, in cash, or its equiv-
alent, to be paid to the Traction Co. within 30
days after the completion of line and operation
begun.

"(2) All costs of construction, both labor and
material, bridges, etc., together with crossing of
K. C. S. Ry., to be paid for by Traction Co.

"(3) No grade on said line to exceed 1% ex-
cept at railroad crossings, where said grade
shall not exceed 1½%.

"(4) The Traction Company to be held blame-
less and free from damages for any dirt or earth
removed or disturbed for fills or cuts within 25
feet from either side of the center of the track.

"(5) A private right of way to be granted to
the Traction Co., of 50 feet in width, for the
purpose of side tracks, switches, or double
tracks, as the company may select.

"(6) The franchise granted by the city of
Shreveport and the parish of Caddo to run from
the date of its issuance for a period of fifty
years.

"(7) The Traction Co. to maintain a schedule,
or headway, of not more than 20 minutes to its
line on Kenneth Avenue, and, beyond that
point, of not more than 30 minutes.  The fare
to be 5 cts., each way, to any point between
Texas street and Greenwood road, and 10 cts.

each way, from the City of Shreveport to the Country Club. A sufficient number of cars to be operated for the fair and races."

The total amount subscribed appears to have been something less than $15,000, and, after the signatures of the subscribers, there appears on the instrument the following form of acceptance, to wit:

"Messrs. Schumpert, Penick & Ford et als.

"Gentlemen: The undersigned Company, represented by W. F. Dillon, president, accepts the foregoing proposition and agrees to do the work and will comply on its part with the above stipulations, the work to be completed within 5 months of its acceptance. Accepted.

"Shreveport Traction Co.
"By ――――――,
"(Date) 1906.      President."

The form is unsigned, and the evidence adduced upon the trial of the case does not show by whom, or at what time, it was written. The Court of Appeal (naturally enough) assumed that it was written by the subscribers as part of their proposition, but plaintiff's counsel, in the brief filed by them, say that it was written on the document containing the proposition by one of plaintiff's officers, after the delivery of the document to plaintiff, and was not even suggested by the subscribers, and that they were ready to prove that fact if the Court of Appeal had remanded the case. However that may be, plaintiff sued upon a contract resulting, it is said, from the proposition accepted, not by the signing of the form, but by the doing the things called for thereby, to the knowledge of the defendant; the petition alleging, inter alia:

"That acting upon said proposal and agreement, it (plaintiff) proceeded to make the extension of its lines in accordance with the terms set out, * * * and has fully complied with the terms of said proposal and agreement in all respects," etc.

To which defendant answered, in substance: (1) That the proposition was never accepted, or, if accepted, he was never notified of its acceptance, or that he had withdrawn the proposition before receiving such notification; (2) that the alleged contract was ultra vires of plaintiff; (3) that plaintiff has not complied with the obligations purporting to have been assumed by it, in that it failed to furnish a sufficient number of cars to accommodate the public during the fair and races, and did not make the "headway" required; (4) that it did not furnish the new cars, as defendant was led to believe it would, but used cars from its other lines, "thus delaying people along the other lines in the city of Shreveport."

Upon the trial in the district court, it was shown, without attempt at contradiction, that, immediately on the receipt of the proposition, plaintiff telegraphed for rails and other materials, and proceeded to build the road, which was completed and in operation within a few months—several weeks before the opening of the fair and races; that, up to the time of such opening, the cars were run within the schedule or "headway" called for by the proposition, and that the fares charged have always been in accordance with said proposition; that, after the opening of the fair and races, a larger number of cars were brought into the service than were called for by the ordinary schedule, and that, whilst, in consequence of the fact that great numbers of persons, constituting the crowds attending the fair, were at times moved by the same consideration to go and return at the same moment, there were, at such times, more or less of delay and complaint, the obligations assumed by plaintiff with regard to furnishing cars was, nevertheless, discharged with reasonable sufficiency. human ingenuity not having as yet devised any scheme by which, under such circumstances, delay and complaint can be altogether avoided. It was further shown that defendant lives (and, we infer, owns property) on the line of the road, and knew, or must have known, of its construction and operation, and it was not shown that he ever intimated any intention to withdraw his sub-

scription until he filed his answer in this suit. The district court must have been of the opinion that plaintiff had accepted the offer made to it by acting on and suing to enforce compliance with it, since, as has been stated, it gave judgment for plaintiff as prayed for. The Court of Appeal, as we understand it, concedes that plaintiff has done all that defendant's offer calls on it to do, save to formally accept the offer and notify the defendant of such acceptance, the views of our learned Brethren upon the subject being, substantially, represented by the following excerpts from their carefully prepared opinion, to wit:

"The evidence shows that the railroad has been constructed and is in operation along the streets named in the proposition, but that no formal acceptance of the proposition was made and no notice thereof given to defendant. The most serious issue presented is, we think, the question as to whether or not a formal acceptance of the proposition and 'notice thereof to the defendant were necessary in order to bind him for the payment of the amount subscribed for by him.' "

The opinion quotes certain articles of the Civil Code, and says:

"These articles not only contemplate, but require, for the completion of the contract, in all cases to which they apply, that there shall be an express acceptance or one implied by law, and, in addition thereto, that notice of such acceptance must be expressly given, or, where the acceptance is implied by law, the circumstances which give rise to such implication must be known to the person making the proposal. But, in either case, notice or knowledge of the acceptance is essential; the person making the proposal having until * * * he receives such notice or knowledge [the right] to withdraw his consent, unless time has been expressly or impliedly given to the person to whom the proposal has been made to communicate his determination."

After referring to the blank form of acceptance which appears upon the instrument sued on, the opinion continues:

"This acceptance was never signed by the plaintiff company nor was any other formal acceptance made and notice thereof given to defendant. Now, if the proposition had been to pay the amount of the respective subscriptions if the plaintiff company would extend the railway along the streets named, without any condi-

tion or without requiring on the part of the plaintiff company any reciprocal promise or obligations, and no intimation given, by the form of acceptance inclosed, that a formal acceptance and notice thereof were required, then it might be that the construction and completion of the railway along those streets named would have been a sufficient assent, and no notice of acceptance would have been necessary. But there is nothing in the form of the proposition nor in the terms thereof which evinced any design on the part of the subscribers to give the plaintiff company the right of concluding the contract by its mere assent, or to dispense with notification of its acceptance. On the contrary, it seems that formal acceptance and notification were clearly within the contemplation of the parties, as shown by the form of acceptance and notice accompanying the proposition, to all intents and purposes, as part of the communication. But, aside from this, that some notification, to say the least, whether by formal notice or implication, of the acceptance of the proposition, was essential, is beyond serious dispute. It was not only conditioned upon the granting of 50 years' franchise by the city of Shreveport and parish of Caddo, but required the promise and obligation on the part of plaintiff company to maintain certain fares to be charged for the service, and to operate sufficient cars to accommodate the crowds attending the fair and races, and that without limit of time. Notification or knowledge of its assent to the terms and stipulations being necessary, and no formal notice having been given, can the knowledge of its assent to all the terms be implied from the mere fact that defendant knew that the work of construction was thereafter begun, the railway completed, and cars operated thereon? We think not. The most that can be said is that those acts manifest an intention to perform the obligations required of it. But an intention to perform does not amount to an enforceable obligation to perform. * * * So, although the railroad has been constructed and is now in operation, and the plaintiff company may be observing the stipulations and conditions contained in the propositions, yet, if it should fail or refuse to continue to do so, the obligation could be legally enforced against it in that respect only upon the theory that, by the institution of this action or otherwise, it is estopped to deny its existence. If, upon the completion of its line, it had failed to observe the requirements stipulated in the proposition, and the subscribers, upon tender of the amounts of their respective subscriptions, had undertaken to enforce the stipulations, the plaintiff company could well have said that there were other considerations, such as the expectation of benefits and profits, which induced it to make the extension, and that it never assented to such requirements. * * *

"It may be that defendant has been benefited by the extension of the railway, and that, really, the work was undertaken and completed on the faith of the subscriptions. But those facts

do not give rise to any legal obligation on the part of the defendant to pay anything. The plaintiff must recover, if at all, upon the alleged contract. And it cannot expect to enforce the obligations of a contract which, through its own apparent laches, it failed to perfect. [Citing] Peet v. Meyer, 42 La. Ann. 1034, 8 South. 534; Menard v. Scudder, 7 La. Ann. 388, 56 Am. Dec. 610; Galt v. Swain, 9 Grat. (Va.) 633, 60 Am. Dec. 311."

## Opinion.

It is suggested, in the brief filed on behalf of defendant, that the applicant herein did not, before making the application now under consideration, apply to the Court of Appeal for a rehearing and give notice of this application, as required by the rule of this court; but the suggestion seems to be founded in error of fact, as appears from the certificate of the clerk of the Court of Appeal.

The hypothesis, suggested in the opinion of the Court of Appeal, "that the defendant has been benefited by the extension of the railway, and that, really, the work was undertaken and completed on the faith of the subscriptions," being well founded in fact, and it being further established, as we think, that the work in question was undertaken and completed to the knowledge of defendant, and that, before defendant had intimated any desire to withdraw his offer (assuming that he would have had that right after plaintiff had acted on the offer), plaintiff had irrevocably committed itself, by the institution of this suit, to the performance of the other obligations imposed on it, there would seem to be nothing further for plaintiff to do in order to entitle it to recover the amount here claimed.

So far as the obligation to pay the amount of his subscription is concerned, defendant and his associates made the proposition:

"If you will construct an electric railway along the following route, * * * the undersigned, in consideration of the improved facilities for reaching the city of Shreveport, the Fair Grounds, and points intermediate, on, or near said line, * * * hereby agree to pay, promptly, on the completion of the laying of said tracks, the amounts set opposite our names;

the following conditions being those under which the railway company is to be built and operated:

### "Conditions.

"(1) A bonus of $15,000, in cash, or its equivalent, to be paid to the Traction Company within 30 days after the completion of line and operation begun.

"(2) All costs of construction, both labor and material, bridges, &c., together with crossing of K. C. S. Ry., to be paid for by Traction Co.

"(3) No grade on proposed line to exceed 1%, except at railroad crossings, where grade shall not exceed 1½%."

The railway, as we have seen, has been constructed along the route selected by defendant and his associates, and it is not disputed that it was constructed, at the cost of the plaintiff, upon the grades designated in their proposition. Whether the subscriptions were payable promptly on the completion of the laying of said tracks, "or, as part of the bonus of $15,000, within 30 days after the completion of line and after operation begun," is immaterial, since the delay in either case has expired, and the other conditions imposed have no bearing upon the obligation to pay. Thus, conditions 4 and 5 represent merely additional obligations assumed by the subscribers.

If condition 6 represents an obligation assumed by plaintiff, it, nevertheless, has no necessary connection with the immediate obligation of defendant to pay his subscription. The franchise, as we take it, was to be obtained, but, not as a condition precedent to the payment of the subscriptions. And so plaintiff is to maintain a certain schedule, charge certain fares, and operate sufficient cars for the fair and the races, but all that is to be done during the years to come, and not before defendant pays his subscription. If, in the future and after defendant has paid his subscription, in accordance with the terms of his proposition, plaintiff fails in the discharge of any obligation, which, according to the terms of said proposition, is to be discharged in the future, other questions will arise which may

be then determined. The law which appears to us to control the case is to be found in title 4, c. 1, § 2, and section 1, arts. 1797 et seq., of the Revised Civil Code, and is to the following effect, to wit:

"Art. 1802. He [the party proposing] is bound by his proposition and the signification of dissent will be of no avail if the proposition be made in terms which evince a design to give the other party the right of concluding the contract by his assent; and, if that assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow."

It seems to us clear that the proposition, in this case, was made in terms which evinced a design to give the plaintiff the right of concluding the contract by its assent.

"Art. 1811. The proposition as well as the assent to a contract may be express or implied. Express when evinced by words, either written or spoken. Implied when it is manifested by actions, even by silence or by inaction in cases in which they can, from circumstances be supposed to mean, or by legal presumption are directed to be considered as, evidence of an assent."

"Art. 1816. Actions, without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract. To receive goods from a merchant, without any express promise, and to use them, implies a contract to pay the value," etc.

\*    \*    \*    \*    \*    \*    \*

"Art. 1818. Where the law does not create a legal presumption of consent from certain facts, then, as in the case of other simple presumptions, it must be left to the discretion of the judge, whether assent is to be implied from them or not."

In the instant case, the proposition which defendant and his associates made to plaintiff was, in substance, "if you will build a railroad, along a certain route, on a certain grade, at your own expense, we will, each, pay you a certain sum when the rails are laid (or within 30 days after you begin operating the road)," and plaintiff at once built the road, in accordance with, and has proved on the trial that it was induced to do so by reason and did so, in acceptance of, the proposition so made.

As to the blank form of acceptance, which appears after the signatures upon the instrument containing the proposition, nothing more is known from the record than that it appears upon the instrument. There was no attempt at the trial, to connect it in any way with the action taken by either plaintiff or defendant, and it seems to us that, if defendant had placed any reliance upon the theory that he thereby intended to intimate that the acceptance of his offer must be in writing, he would have so testified.

It is said, however, that the mere building of the road was not necessarily an acceptance of those conditions of defendant's proposition whereby other obligations were to be assumed by plaintiff, and we acknowledge the force of the suggestion. But the time within which plaintiff could assent to the assumption of those other obligations had not elapsed when this suit was instituted, and the institution of the suit was itself an acceptance, by judicial admission, of all the conditions imposed by the proposition. Moreover, so far as it goes, the evidence shows that the particular conditions in question were complied with from the time that the road was completed, which was all that could be done by way of accepting these conditions by action. We are of opinion that the views here expressed are in accord with the text of the law, and with the jurisprudence, including that referred to by the learned judge of the Court of Appeal.

Seal v. Erwin et al., 2 Mart. (N. S.) 245; Ryder v. Frost, 3 La. Ann. 523; Menard v. Scudder, 7 La. Ann. 385, 56 Am. Dec. 610; McIlvaine & Spiegel v. Legaré & Godchaux, 36 La. Ann. 361; Gordon v. Stubbs, 36 La. Ann. 625; Bank v. Lemarie et al., 106 La. 429, 31 South. 138.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeal, here made the subject of review, he annulled, avoided, and reversed, and that the

judgment rendered in this case by the district court be affirmed. All costs to be paid by the defendant.