**SCHWEGMANN BROTHERS et al. v. CALVERT DISTILLERS CORP.**

**SCHWEGMANN BROTHERS et al. v. SEAGRAM DISTILLERS CORP.**

Nos. 13162, 13163.

United States Court of Appeals
Fifth Circuit.
July 27, 1950.

Rehearing Denied Sept. 15, 1950.

Russell, Circuit Judge, dissented.

John Minor Wisdom, Saul Stone, Paul O. H. Pigman, all of New Orleans, La., for appellant.

Walter J. Suthon, Jr., Robert G. Polack, Monte M. Lemann, J. Blanc Monroe, all of New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Based on diversity and amount, these two suits, brought under Sec. 2 of Act No. 13 of 1936, La.R.S. 51:391–396, the Louisiana Fair Trade Law,[1] were for injunctions, preliminary and permanent.

Defendants appeared by answers and motions to dismiss, and, the applications for preliminary injunctions coming on for hearing, there were findings of fact and conclusions of law in plaintiffs' favor, and a decree in each suit granting the preliminary injunction as prayed.

The defendant in each suit appealing, the two appeals were set and heard together, and now stand for disposition on appellants' two contentions.

One of these is that the so-called resale price maintenance contracts between plaintiffs and other retailers than defendants, on which enforcement of the Fair Trade Law against the non-signing defendants is based, are null and void under the laws of Louisiana for want of mutuality or because of potestativity.

· The second is that the scope of the resale price maintenance permitted (when valid under state law) by the Miller-Tydings Amendment[2] to the Sherman Act,[3] relied on by plaintiffs to save their price fixing activities from the Sherman Act does not extend to resale price maintenance against defendants, non-contracting retailers.

Appellees vigorously dispute the correctness of both of these contentions, and, by

---

1. "Section 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of Section 1 of this Act [R.S. 51:392], whether the person so advertising, offering for sale, or selling is or is not a party to the contract, is un- fair competition and is actionable at the suit of any person damaged thereby."

2. Act of Aug. 17, 1937. See Ch. 690, Title VIII, 50 Stat. 693, 15 U.S.C.A. § 1.

3. Act of July 2, 1890, Ch. 647, 26 Stat. 209, 15 U.S.C.A. §§ 1–7, 15 note.

way of preliminary counter-attack, contrary to the position taken in their pleadings and on the trial, assert that the sales sought to be enjoined were wholly intrastate sales, therefore beyond the reach of the Sherman Act.

They admit: that each plaintiff operates on a nation wide scope and functions in interstate commerce; that each uses the mails interstate and functions in some respects from headquarters in New York in formulating the minimum price schedules under the fair trade contracts with various retailers in the several states having such statutes and in giving notice of these contracts and price schedules to all retailers in the state; and that the liquors which each plaintiff sells to Louisiana wholesalers are shipped in interstate commerce from points outside Louisiana to the purchaser in Louisiana following such sales.

They insist, however: that the reselling activities regulated by the injunctions herein represent the second intrastate transaction in the sequence of events following the movement of these liquors into Louisiana in interstate commerce pursuant to sales made by the distributors to Louisiana wholesalers; that these wholesalers then sell intrastate to retailers; and that these in turn sell intrastate to their customers.

Appellants, on their part, point to the facts: that plaintiffs have expressly invoked the Miller-Tydings Act; that they have expressly alleged a plan of general interstate operation and activity, in control of price and restraint of trade; that they have tried the case below on the theory that interstate commerce was affected; and that they have, without distinction between interstate and intrastate sales, sought and obtained an injunction whose purpose and effect is to maintain the pattern of restraints on commerce between the states which the plan was designed to, and does, make effective.

Citing in their support Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502, and United States v. Frankfort Distilleries, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951, they urge upon us that appellees in thus focusing here on the particular sales made by appellants, have not only abandoned the theory on which the suit was brought and tried but have completely missed the point of decision in the Miles case, supra, 220 U. S. at page 400, 31 S.Ct. at page 381:

"That these agreements restrain trade is obvious. That, having been made, as the bill alleges, with 'most of the jobbers and wholesale druggists and a majority of the retail druggists of the country', and having for their purpose the control of the entire trade, they relate directly to interstate as well as intrastate trade, and operate to restrain trade or commerce among the several states, is also clear. Addyston Pipe & Steel Co. v. U. S., 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136; Bement & Sons v. National Harrow Co., 186 U.S. 70, page 92, 22 S.Ct. 747, 46 L.Ed. [1058], 1069; Montague & Co. v. Lowry, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Swift & Co. v. U. S., 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518."

We agree with appellants that though the sales made by appellants were made intrastate, the transactions, the subject of this suit, so affect interstate commerce and the exertion of the power of congress over it as to bring plaintiffs' activities within the reach of the Sherman Act, unless the Miller-Tydings Amendment to that act excludes them.[4]

This brush fighting, of appellees' making, attended to and out of the way, there remains in the way of our reaching the real battleground of the case, the scope of the Miller-Tydings Amendment, only the equally thin skirmish line which appellants have thrown out in support of their contention that the so-called "Fair Trade Contracts" relied on to support the action are not contracts within the meaning of the Louisiana Fair Trade Law and the Miller-Tydings Amendment.

In our opinion, this position is as little tenable, is as easily turned and taken, as was the line behind which appellees fought

---

4. Atlantic Co. v. Citizens Ice & Cold Storage Co., 5 Cir., 178 F.2d 453; Dr. Miles Medical Co. v. Park; U. S. v. Frankfort Distilleries, supra.

their delaying action. In the first place, if we could agree with appellants' characterization[5] of these contracts, we could not agree with their conclusion that they would be insufficient to support the statutory action here brought. For it is perfectly plain that whatever the legal and binding effect upon the parties of "these fair trade contracts", it is with "these fair trade contracts" the statutes in question deal, it is to give effect to "these fair trade contracts" that these statutes were drawn.

■ But, if we could agree that, in using the word "contract", the statutes meant to, and do, deal only with contracts which are enforceable between the parties, we think the points appellants make against the contracts in question here are strained and without substance, and that they will not stand up in the light of the modern decisional tendency in Louisiana and elsewhere. This tendency is against too readily lending the aid of courts to defeat contracts on grounds of want of mutuality[6] or the presence of a potestative condition.[7] When, therefore, escape from an obligation is sought on these grounds, it is now settled law that courts will, where reasonably possible to do so, find a contract definite and enforceable.

Coming at last to the main battle ground, whether the Miller-Tydings Amendment is effective to relieve from the prohibitions of the Sherman Act, the price maintenance contracts relied on in this case, we find both appellants and appellees, instead of coming and sticking to this point, each setting up and completely outfitting a straw man of his own, the legislative history of the act as he claims it to be, and each furiously laying about to knock the other's straw man down.

■ It is not for one who asserts rights under a state statute to prove as a condition precedent to its enforcement that the legislature had the right to enact it. He may stand upon the presumption of validity until such presumption is overthrown. This is especially so in this case since it is admitted, as indeed it must be, that unless it it prohibited by federal law, the Louisiana Fair Trade Law has been already determined to be a valid law of the state of Louisiana[8] binding on consenters and nonconsenters alike as a declaration of state fair trade policy which the state is competent to make.

It is admitted, too, that it has been held in Old Dearborn Distributing Co. v. Seagrams-Distillers Corp., 299 U.S. 183, 57 S.

5. " 'Contract' is purely a courtesy title when it is applied to a so-called 'fair trade contract'. The word has about the same relation to contracts (as the law knows contracts) as the term 'fair trade' has to fair trade in which retail competition is eliminated. In the advertising slogan 'fair trade contract', 'contract' is a counter word used to convey the impression of a long-accepted, honorable, sacrosanct legal institution—the Mutual Agreement."
* * *

"Although these are statutory actions brought against non-signing retailers, the actions are premised upon the existence of a fair trade contract. In support of their action, appellees annexed to each complaint a contract typical of all contracts executed by each appellee. The same form is used by both appellees. The contracts—which undoubtedly were drawn in New York and not by the able Louisiana attorneys for the appellees—are set forth in full in the transcripts."

6. Armstrong v. Southern Production Co., 5 Cir., 182 F.2d 238, and cases cited;

Port Chester Wine & Liquor Shop v. Miller Bros. Fruiterers, 253 App.Div. 188, 1 N.Y.S.2d 802; Id., 281 N.Y. 101, 22 N.E.2d 253; Calvert Distillers Corp. v. Nussbaum Liquor Store, 166 Misc. 342, 2 N.Y.S.2d 320; Hutzler Bros. Co. v. Remington Putnam Book Co., 186 Md. 210, 46 A.2d 101, 163 A.L.R. 884; Shreveport Tractor Co. v. Mulhaupt, 122 La. 667, 48 So. 144; R. F. Grace Printing & Mfg. Co. v. Arnaud's Drug Stores, 10 La. App. 298, 121 So. 359; Houbigant Sales Corp. v. Woods, 123 N.J.Eq. 40, 196 A. 683.

7. La.Civ.Code, Arts. 2024, 2034, 2035, Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182; Cockburn v. O'Meara, 5 Cir., 141 F.2d 779; Conques v. Andrus, 162 La. 73, 110 So. 93.

8. Pepsodent Co. v. Krauss Co. (International Cellucotten Products Co. v. Krauss Co.), 200 La. 959, 9 So.2d 303; Mennen Co. v. Krauss Co. (Bristol-Myers Co. v. Krauss Co.), 5 Cir., 134 F.2d 348.

Ct. 139, 143, 81 L.Ed. 109, 106 A.L.R. 1476, that state statutes of this character do not violate any provision of the Constitution of the United States, though a fair trade agreement "constitutes an unlawful restraint of trade at common law and, in respect of interstate commerce, a violation of the Sherman Anti-Trust Act".

■ In this state of the law, proponents of, and protagonists for, the fullest scope for state fair trade statutes needed only the passage of a federal act relieving price maintenance contracts from the prohibitions of the Sherman Act. They did not need to seek from Congress permission or authority to enact fair trade statutes. It would have been a complete misconception of the source of state power, indeed in complete derogation of it, to do so. For the power to enact state fair trade laws derives not from the Congress, but from the inherent powers of the states.

Insisting, therefore, that the Miller-Tydings Amendment is ineffective to remove the prohibitions of the Sherman Act, as to non-signers, because it in terms refers to, and deals merely with, *price maintenance contracts which are valid by state law,* and does not in terms grant to the states power to make those laws effective against non-signers of such contracts, appellants wholly misconceive the issue.

Likewise, appellees, when they devote a great part of their brief to the history of the act to demonstrate that it was the intent of Congress to cover laws binding non-signers equally misconceive the issues and take on a burden which they do not have to bear.

■ Agreeing then with appellants that the act is free from ambiguity and that there is no occasion to resort or propriety in resorting to its legislative history to find its meaning we yet agree with appellees that in comprehensively and completely removing from the prohibitions of the Sherman Act *price maintenance contracts which are valid according to the law of a state,* the amendment removed every prohibition from or impediment in the way of, the enactment by the states of fair trade laws, binding alike upon signers and non-signers.

This being so, it is wholly immaterial whether the Congress as a whole, or particular members of it,[9] in enacting the Miller-Tydings Amendment, did or did not have in mind that there were state acts applying to non-signers as well as signers and, therefore, did, or did not, have in mind the specific intent that the amendment should be effective as well against non-signers as against signers.

■ Read on its face and interpreted in accordance with that reading, what the amendment did was to remove all Sherman Act restrictions on agreements restraining trade in states where, by the state law, these agreements had been validated as to intrastate commerce. Thus a non-signer finding himself pursued under a fair trade act and without remedy as to intrastate transactions, is bound by the terms and wording of the amendment to find himself equally without remedy as to interstate transactions. For when he invokes the Sherman Act to prevent the enforcement against him of the state law, he is referred to the Miller-Tydings Amendment of it with the inquiry, "What are you complaining of, the agreements which establish a fair price?" and the answer, "The Sherman Act as amended now validates them." If the non-signer answers, "No, I am not complaining of the agreements. I am complaining of the act of the state, which, though I did not sign them, requires me to respect those agreements, whereas the amendment of the Sherman Act, to which you refer, did not refer to, or authorize, state action against non-signers." "Sorry", replies the Sherman Act, "but the amendment neither authorizes nor prohibits state legislation. The control it exercises is not over, the effect it has is not upon, legislation by the states. It is concerned with, and only with, the Sherman Act, legislation by Congress affecting interstate commerce. The amendment, removing from the prohibition of that act 'contracts or agreements prescribing minimum prices for the resale of a commodity' * * * 'when

9. Cf. Fleming v. A. H. Belo Corp., 5 Cir., 121 F.2d 207, at pages 212–213.

contracts or agreement of that description are lawful as applied to intrastate transactions under' any state law, was enacted to, it did remove the Sherman Act as an obstacle in the way of completely effective state action, and there is nothing, therefore, that the Sherman Act can do for you."

Whatever then may be our views as to the unwisdom of the policy lying back of fair trade acts and the Miller-Tydings amendment, we are in no doubt that the judgment was right, and must be affirmed.

RUSSELL, Circuit Judge, dissenting.

As to two of the underlying questions which should control the disposition of this case, we are all in agreement. That is that the transactions were so much in interstate commerce as to be subject to the exercise of Congressional power in the regulation thereof and, also, that the provisions of the Miller-Tydings Amendment, relaxing the regulations in protection of interstate commerce evidenced by the Sherman Act,[1] are so clear as to render improper resort to the legislative history of that Amendment in applying its terms.[2] The sole point of difference between us therefore is the effect which should be given this amendment when read in the light of its unambiguous language.

It seems clear to me that the majority opinion enlarges and extends the provisions of the statute to a scope not justified by the legislative language. I can not agree that the amendment, merely by excepting from the prohibition of the otherwise illegal "contracts and agreements" forbidden by the Sherman Act, "contracts and agreements prescribing minimum prices * * * when *contracts* or *agreements* (italics supplied) of that description are lawful as applied to intrastate transactions" under the State law, likewise embraces within its exemption the provisions of any State *statute,* and this notwith-

standing the only reference to such statute is that which might validate the "contracts and agreements." It may be further observed at this point, that the Miller-Tydings Amendment in no way sought to remove the prohibition against a "combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States."

The nature and purpose of the statute amended,—the Sherman Act,—requires that any amendment thereto which in anywise relaxes the statutory declaration of public policy should be strictly construed. As has been said, "the legislative purpose set forth in the general enactment expresses the legislative policy and only those subjects expressly exempted by the proviso should be freed from the operation of the statute."[3] Indeed, upon any basis, (except possibly from applying the statute, not as enacted, but upon conjecture which might arise from some features of its legislative history), it is difficult to perceive any basis for enlarging the plain meaning of its language. But we are all agreed that there is no occasion here for consideration of the legislative history of the Amendment, and therefore whatever may have been the intention of its sponsors, we are controlled by the amendment as actually enacted. The amendment deals only with "contracts and agreements" and in the absence of any enlarging provision, furnishes no basis for incorporating as an exemption from the Sherman Act any provision of a State Statute which restrains interstate commerce by provisions applicable to those who have not made the "contracts and agreements." My position is illustrated by the observation that the Miller-Tydings Amendment goes no further than to remove the taint of illegality attendant upon such contracts as to interstate transactions (Dr. Miles Medical Co. v. John D. Park and Sons Co., 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502) as is removed by section

1. 15 U.S.C.A. §§ 1–7, 15 note.

2. Caminetti v. U. S., 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Gemsco, Inc., v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921; Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207, 10 A.L.

R.2d 921; Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529.

3. Sutherland on Statutory Construction, 3rd Ed. 1943, § 4933; U. S. v. Dickson, 15 Pet. 141, 163, 40 U.S. 141, 163, 10 L. Ed. 689.

1 of the Louisiana Act now in question as to intrastate transactions. Section 1 of the Louisiana Act relates, as likewise does the Federal Act, only to establishing the legality of the *contracts* in question. That far, the two statutes are in *pari materia*. Section 2 of the Louisiana statute, upon which the present cause is predicated, is a substantive law of Louisiana, not a contract or agreement. I believe it may not be successfully contended that without section 2, the provisions of section 1 could be in any wise applied to retailers who had not seen fit to execute price maintenance contracts legalized by section 1. The terms of the Federal Amendment no more embrace section 2 of the Louisiana Act than does section 1 of that Act. Thus Congress has legalized the *contract* validated by the State law, but not every provision of the statute. If, over and beyond the establishment of the legality of the contractual obligation to maintain minimum prices, the State statute otherwise authorizes conduct or procedure which runs afoul of a Congressional protection of interstate commerce from unlawful restraint, such as the appellant defendant here asserts to be true as to him, such provision of the State statutes must yield to paramount Federal law.

It is not material whether the defense be declared predicated upon the lack of State power, or upon the ground that the enforcement of a State statute will result in a Federal Court of Equity basing the exercise of its injunctive power upon grounds which are illegal because of the Sherman Act. The result properly to be reached is the same, for the Federal Court must not require action which countenances conduct contrary to Federal law. In the present case, the Court could enforce section 1 of the Louisiana Act, but could not enforce that part of section 2 relating to non-contractors if, under the circumstances, such enforcement would be contrary to the Sherman Act. It is recognized that in this time when the weight of interstate commerce affects multitudinous transactions, the construction here given the Miller-Tydings Amendment greatly circumscribes the relaxation of Federal control in the enforcement of State Fair Trade Acts. However, we should apply the statute as written. This construction removes the legal difficulty to the enforcement of permissive contracts, themselves declared illegal in Dr. Miles Medical Co. v. John D. Park and Sons Co., supra, and likewise makes it clear that the provision of the Amendment that the making of such contracts shall not be an unfair method of competition, removes further infirmity theretofore found inherent in such contracts. Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, 19 A. L.R. 882. If the Congress determines it wise to further relax the prohibitions of the Sherman Act, it can very easily do so by merely excepting from its operation all provisions of State Fair Trade Acts, including their planned restrictive operations against sales by those in no wise obligated by any contractual relation restriction.

It is also clear that as to those who have not executed contracts or agreements validated by the Amendment, there may be combinations or conspiracies in illegal restraint of trade which have a basis over and beyond that afforded by the execution of contracts and agreements as such. If so, such contracts being legally permitted, of course would not themselves evidence any illegality of agreement, but neither would they raise a sanctuary for those who, though parties to legal contracts, might illegally combine or agree to restrain interstate commerce so far as non-contractors are concerned. This was recognized by the parties and the trial Court. That Court, being of the opinion that the Miller-Tydings Amendment, construed in the light of its legislative history, in effect adopted the State Fair Trade Statute (as do my colleagues, but without resort to legislative history), expressly found as a conclusion of law, "defendants have attempted to show that plaintiff's actions in fixing retail prices constitute a restraint of trade between the states. No finding on this feature of the case is required, however, in view of the Miller-Tydings Amendment to the Sherman Anti-Trust Act." For the reasons I have stated, I do not accept this view. The proper disposition of this case

would require us to adjudge that the Court was in error in holding that the Amendment removed the protection of the Sherman Act from non-contractors. He should have considered and adjudged the defendants' contention that, as to them, non-contractors, the plaintiffs' conduct constituted an illegal restraint of commerce between the states, at the same time giving to the plaintiffs the benefit of the Amendment so far as applicable to parties entering into the permitted price maintenance contracts. We should not evaluate the facts, which must be done in order to apply the law, in the first instance. I would reverse the judgment of the trial Court with direction that the case be thus heard and concluded.

On Petitions for Rehearing.

PER CURIAM.

It is ordered that the petitions for rehearing be, and they are hereby, denied.

RUSSELL, Circuit Judge, Specially Concurring.

Since my Brethern remain firm in their original opinion, no purpose could be served by the grant of a rehearing, and I therefore concur in the order denying the same.