208 So.2d 340 (1967)
The ADVERTISER, DIVISION OF the INDEPENDENT INCORPORATED, Plaintiff-Appellees,
v.
Charles B. TUBBS et al., Defendant-Appellant.
No. 2141.
Court of Appeal of Louisiana, Third Circuit.
November 29, 1967.
Rehearing Denied December 28, 1967.
On Rehearing January 18, 1968.
Writ Refused February 2, 1968.
Writ Granted March 25, 1968.
*341 Dragon & Kellner, by Robert A. Dragon, Jr., Lafayette, for defendant-appellant.
William E. Logan, Jr., Lafayette, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
FRUGE, Judge.
The plaintiff, the Advertiser, Division of the Independent, Inc., [hereinafter called the Advertiser] brought this suit upon an alleged contract between it and the defendants, Southwest Rambler Sales and Service, Inc., and Charles B. Tubbs, President of Southwest Rambler, for the contract price of certain daily advertisements made by the defendant company in the Lafayette newspaper, The Daily Advertiser.
The trial court granted judgment in favor of The Advertiser for the full amount sought, that is, Seventeen Hundred Ninetythree and 22/100 ($1793.22) Dollars, but refused to grant judgment against Mr. Tubbs personally. From this judgment the defendant Southwest Rambler perfected this appeal, and the plaintiff answered the appeal, asking this court to also hold Mr. Tubbs personally liable under the contract.
The defendants presented no defense to this suit other than the contention that no binding contract between them and The Advertiser was ever effected.
The contract in question was executed in the name of Southwest Rambler on July 3, 1965, covering a period of one year after that date. This was apparently a renewal contract of one executed a year earlier bearing essentially the same terms.
*342 At the bottom of the contract there are blanks provided for three signatures. One blank is intended as the place for the officer of a corporation to sign in behalf of that corporation. Under that, there is a blank provided for the signature of a party where that party is an individual. Then on the left there is a space for the signature of the agent for The Advertiser to signify acceptance of the contract by plaintiff. The contract was signed only by Mr. Tubbs in the space provided for the signature of the officer of Southwest Rambler signing in behalf of that corporation. The space provided for the signature of the agent of The Advertiser accepting the contract was never filled by plaintiff. It is on this basis that defendants contend that no binding contract was entered into, since this instrument was never formally "accepted" by plaintiff.
The defendants contend that where the parties contemplate entering into a written contract, no such contract ever takes effect until the writing is completed and signed by all parties thereto. The defendant further argues that since The Advertiser never signed the contract signifying acceptance thereof, this contract was never perfected; and thereby no suit can be maintained upon this incompleted instrument.
In support of this argument the defendant cites the case of Ferre Canal Co. v. Burgin, 106 La. 309, 30 So. 863 (1901); Roy O. Martin Lumber Co. et al. v. St. Denis Securities Co., 225 La. 51, 72 So.2d 257 (1954); Loyola U. Radio-WWL-TV v. Lakeside Rambler Sales, Inc., 199 So.2d 49, La.App. 4 Cir. (1967).
In the Loyola U. Radio-WWL-TV case, supra, the Court found that the proof was insufficient to sustain a default judgment in favor of the plaintiff where the plaintiff sued under an alleged contract and presented no proof of the validity or existence of that contract in obtaining the judgment. That case is clearly inapplicable here, since in the instant case the contract is in evidence and there is other proof supporting its existence.
In the Roy O. Martin Lumber Co. case, supra, the alleged contract consisted of letters written between the parties, the tenor of which clearly indicated that no final agreement was intended until the parties should meet and draw up a formal contract. The court held that these letters did not constitute the final and binding agreement of the parties, and as such, could not support a claim for damages for breach of contract. Likewise, we find this case inappropriate to the instant facts.
In Ferre Canal Co. v. Burgin, supra, the plaintiff sought to collect sums allegedly due it under a written contract which the defendant refused to sign. The court there said:
"Under these circumstances, we conclude that the execution of the written contract was a condition precedent to the existence of the contract. `It is elementary in our law that, where the negotiations contemplated and provided that there shall be a contract in writing, neither party is bound until the writing is perfected and signed.'" (30 So. 864)
It is important to note that in the Ferre Canal Co. case, as well as those cases cited in that opinion, it was the defendant who failed to sign the written contract. Since in the instant case the defendant did sign the contract sued upon by the plaintiff, we do not find this latter case controlling of the issues presented here.
The appellant's contention that the contract is not binding upon him, although he had signed it, is based upon the quoted language"where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed." (Emphasis added.) The ancestry of this dictum precedes the revision of the Louisiana *343 Civil Code in 1825.[1] Before that revision, there were no provisions (now Articles 1797-1818) stating that a contract may be accepted by implicationthat is, through acts, silence or even inaction. Thus, the above quoted language is no longer a sound and completely valid statement of the law in view of Articles 1797, 1811, 1816, and 1817 of the present Civil Code.[2]
The plaintiff, on the other hand, argues that the contract was fully effective and binding upon both parties since the plaintiff evidenced its acceptance through its actions, in that it performed under the provisions of that contract for several months. Plaintiff relies chiefly upon Articles 1804 and 1811 of the Civil Code. Article 1804 states:
"The acceptance needs [need] not be made by the same act, or in point of time, immediately after the proposition; if made at any time before the person who offers or promises has changed his mind, or may reasonably be presumed to have done so, it is sufficient."
Article 1811 provides:
"The proposition as well as the assent to a contract may be express or implied:
"Express when evinced by words, either written or spoken;
"Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent."
In addition, Article 1816 provides in part:
"Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract. * * *"
These provisions have been applied to contracts which were reduced to writing. See Dobbins v. Hodges, 208 La. 143, 23 So. 2d 26 (1945); Shreveport Traction Co. v. Mulhaupt, 122 La. 667, 48 So. 144 (1908); Lowy v. Bulliard, 17 So.2d 855 (La.App. 1st Cir. 1944). See also, Woodworth v. Wilson, *344 11 La. Ann. 402 (1856); Amory v. Black, 13 La. 264 (1839).
We are of the opinion that since the contract at issue in the present suit is not required to be in any special form, its acceptance may be made in any manner which communicates an intent to be bound thereunder. The action of both parties clearly indicates an intent to be bound under the terms of the contract. The plaintiff performed fully under the provisions of the contract in providing the requisite space for Southwest Rambler for advertising purposes. As to this matter, the defendants do not even attempt to show any lack of full compliance by the plaintiff company under the terms of the contract. The defendants made several payments after the execution of the second contract amounting to over $3000. These payments substantially conform to the amounts charged by the plaintiff under the terms of the contract.
We entertain little doubt that plaintiff performed under the provisions of the contract here at issue, thereby indicating a design to be bound thereunder. Furthermore, the advertising performed by the plaintiff for the Southwest Rambler during this period clearly evidences an acceptance of the terms of the contract as prescribed under Civil Code Articles 1797, 1804, 1811 and 1816 (quoted supra). The mere filing of this suit itself may be evidence of acceptance of the contract on the part of the plaintiff. See Shreveport Traction Co. v. Mulhaupt, supra.
Therefore, we find no error in the trial court's conclusion that Southwest Rambler Sales and Service, Inc. is liable under a valid written contract to the plaintiff in the full sum of $1793.22, plus interest at the rate of five percent per annum from the day this suit was filed.
The plaintiff has answered the appeal and requested this court to amend the judgment of the trial court insofar as it released Charles B. Tubbs from liability under the contract. The contract in question expressly provides that an officer signing on behalf of the corporation personally guarantees payment of any debt incurred under the contract in default of the corporation. Mr. Tubbs signed on behalf of Southwest Rambler in the capacity of President of that corporation. By such action, he rendered himself personally liable for payment of whatever debt the corporation might incur to the plaintiff pursuant to the contractual obligations. It was unnecessary, we feel, for Mr. Tubbs to also sign in the following blank as an individual before he could be held personally liable under the contract. The clear provisions of the contract that "the officer or officers signing in behalf of the corporation hereby personally guarantees payment of the same * * *" indicates that the personal liability of the officer attaches through his signing on behalf of the corporation as an officer of it and not by signing in his individual capacity. Therefore, we are of the opinion that Charles B. Tubbs is also liable along with Southwest Rambler Sales and Service, Inc. under the provisions of the contract.
For the foregoing reasons, the judgment of the trial court is amended and affirmed so as to provide for judgment in favor of the plaintiff, The Advertiser, Division of the Independent, Inc. against the defendants, Charles B. Tubbs and Southwest Rambler Sales and Service, Inc., for the full sum of One Thousand Seven Hundred Ninetythree and 22/100 ($1793.22) Dollars, with interest of five percent per annum accruing from the date this suit was filed. Costs of these proceedings are to be assessed against defendants, Charles B. Tubbs and Southwest Rambler Sales and Service.
Amended and affirmed.

ON REHEARING
En banc.
FRUGE, Judge.
In the above-titled case, plaintiff sued Southwest Rambler Sales and Service, *345 Inc. and Charles B. Tubbs under a contract to collect sums allegedly owed plaintiff. The trial court rendered judgment in favor of plaintiff against Southwest Rambler Sales and Service, Inc. but in favor of defendant, Charles Tubbs, dismissing plaintiff's suit as to him. Southwest Rambler appealed and plaintiff, The Advertiser, answered the appeal and asked that we amend the trial court's judgment and hold Charles Tubbs liable also under the contract. We affirmed the judgment of the trial court against Southwest Rambler but also rendered judgment in favor of the appellee, The Advertiser, against Charles Tubbs personally.
From these judgments all parties requested a rehearing.
After due consideration, we granted a rehearing (which was submitted on briefs) in favor of Charles B. Tubbs and in favor of The Advertiser and denied the application of Southwest Rambler Sales and Service, Inc.
Counsel for Mr. Tubbs contends that inasmuch as the appeal in this suit was taken only by Southwest Rambler (not by Mr. Tubbs) and the appellee, The Advertiser, did not take a separate appeal, thereby specifically bringing the trial court's judgment in favor of Mr. Tubbs before this court, our judgment amending that of the trial court and holding Mr. Tubbs personally liable under the contractual agreement, is erroneous.
We find merit in this contention. The trial court gave judgment in favor of the appellee, The Advertiser, against Southwest Rambler, but also gave judgment in favor of the co-defendant, Mr. Tubbs.
In Lomenick v. Hartford Accident and Indemnity Co., 189 So.2d 731 (La.App. 3rd Cir., 1966), we stated:
"In order to obtain relief against another appellee, a plaintiff-appellee ordinarily must appeal independently. An answer to a defendant-appellant's appeal does not ordinarily serve the function of an independent appeal and entitle one appellee to amendment of the trial judgment in his favor against another appellee."
See also Murry v. Bankers Fire and Marine Insurance Co., 198 So.2d 532 (La.App. 3rd Cir., 1967). We believe this rule to be applicable here.
Counsel for The Advertiser contends that C.C.P. Art. 2133 gives an answer to an appeal the same status as a separate appeal. He quotes: "The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him and of which he complains in his answer."
We are of the opinion, however, that the above-quoted language refers only to the rights as between the appellees and appellants actually before the appellate court. See Lomenick v. Hartford Accident and Indemnity Company, supra.
Counsel for The Advertiser brought to our attention the fact that we neglected to award 25 percent attorney's fees, as provided for in the contract. In affirming the judgment of the trial court in favor of The Advertiser and against Southwest Rambler, we overlooked and amended judgment for the attorney's fees in favor of the plaintiff, The Advertiser, in the amount of 25 percent of $1,793.22. Having found that there did exist a valid written contract between plaintiff, The Advertiser, and defendant, Southwest Rambler, it follows therefrom that the attorney's fees in the foregoing amount should properly be allowed.
For these reasons, our prior judgment rendered in this titled case, is amended, so as to deny plaintiff, The Advertiser's, claim against Charles B. Tubbs personally, under the contract, and to award plaintiff attorney's fees in the amount of 25 percent of $1,793.22. With these amendments, our former judgment is reinstated.
Amended and affirmed.
Rehearing denied.
NOTES
[1] That statement apparently stems from the case of Villere v. Brognier, 3 Martin (O.S.) 326 (1814). That rationale resulted from an interpretation of the La. Civil Code of 1808. Under that Code, there were no such provisions as what is presently Civil Code Articles 1797 through 1818. These articles, which were not transcribed into our Code until 1825, were probably borrowed from the French writer, Toullier, as expressed in his works "Le Droit Civil Francais", (1st ed. 1812). This is the conclusion reached by Professor Robert A. Pascal in his Article, "Duration and Revocability of an Offer", 1 La.L.Rev. 182, (1938). Therefore, only since 1825 have we had provisions to the effect that an acceptance of an offer may be made through silence or inaction or some sort of performance under a written contract, even though the contract was not signed by the accepting party.
[2] "Art. 1797. When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence."

"Art. 1811. The proposition as well as the assent to a contract may be express or implied:
"* * * Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent."
"Art. 1816. Actions without words, either written or spoken, are presumptive evidence of a contract, when they are done under circumstances that naturally imply a consent to such contract * * *"
"Art. 1817. Silence and inaction are also, under some circumstances, the means of showing an assent that creates an obligation. * * *"