289 So.2d 554 (1974)
Malick SALIM, Plaintiff-Appellee,
v.
LOUISIANA STATE BOARD OF EDUCATION and Louis J. Michot et al., Defendants-Appellants.
No. 4267.
Court of Appeal of Louisiana, Third Circuit.
January 25, 1974.
Rehearing Denied February 25, 1974.
Writ Refused April 19, 1974.
*556 J. Reginald Coco, Jr., Baton Rouge, and Allen R. Bares, Lafayette, for defendants-appellants.
Makar & Whitaker by John Makar, Natchitoches, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Malick Salim, as lessor of a warehouse building in Natchitoches Parish, instituted this suit on June 12, 1972, to recover the rental payments allegedly due him under the lease contract. The defendants are Louisiana State Board of Education and Louis J. Michot, individually and as Superintendent of Education.
A writ of sequestration was issued when the suit was filed directing the seizure of the furniture and other movable property on the leased premises. Upon petition of the State Board of Education and Michot, however, an order was issued by the trial court on July 10, 1972, releasing the sequestration without the necessity of defendants furnishing bond.
Following a trial on the merits, judgment was rendered by the trial court in favor of plaintiff, condemning Louisiana State Board of Education to pay to plaintiff the sum of $1,500.00 per month, being the monthly rental payments provided in the lease contract, for the remainder of the term of the lease. Defendants appealed. Plaintiff has answered the appeal praying that the judgment be amended to decree that all future monthly rental payments due under the lease are payable immediately, and to condemn defendants to pay damages for taking a frivolous appeal.
The issues presented are whether the lease contract is valid, whether the filing of this suit and the sequestration of defendant's property constituted a violation or termination of the lease by plaintiff, and whether the payment of monthly rental installments provided in the lease should be accelerated.
On May 20, 1970, a lease contract was entered into by Malick Salim, as lessor, and the Louisiana Department of Education, as lessee, affecting a warehouse and office building in Natchitoches. The lease was for a term of ten years, commencing on September 1, 1970. As consideration for the use of the leased premises, the lessee agreed to pay to plaintiff the sum of $1,500.00 per month during the term of the lease, the first payment being due and payable on September 1, 1970, and the remaining installments being due and payable on the first day of each succeeding month thereafter while the lease is in effect.
The contract was signed by plaintiff, as lessor, and it was signed in behalf of the State Board of Education, lessee, by Fred L. Tannehill, President, and by William J. Dodd, Superintendent, Louisiana State Department of Education. Before the lease *557 was entered into, the State Division of Administration advertised for competitive bids on such a lease, and three bids were received, one of which was by plaintiff Salim. Officials of the Department of Education and the Lease and Rental Section of the Division of Administration agreed that the bid submitted by plaintiff was the best one, and accordingly the lease contract was signed by the parties hereinabove mentioned. Under those signatures, the word "Approved" was typed on the lease contract, and immediately following that word there appears the signature of W. W. McDougall, Commissioner, Division of Administration.
The bid submitted by plaintiff and the lease contract provided that Salim would construct a warehouse building in accordance with blue print drawings and specifications which were supplied by the lessee and were attached to the lease contract. Salim constructed the building in accordance with those plans, and the Department of Education proceeded to occupy and to use the premises on September 1, 1970. The Department continued to occupy the warehouse and premises at least until after this suit was filed, on June 12, 1972.
Defendant Michot succeeded William J. Dodd as State Superintendent of Education on May 9, 1972. Michot wrote to plaintiff Salim on May 26, 1972, advising him that the State Department of Education would no longer need the warehouse building, that the building would be vacated within the next thirty days, and that the rent due for the use of the premises would be paid through June 30, 1972. In that letter Michot also stated:
"A search of the minutes of State Board of Education meetings during the past eight years does not reveal where authority to enter into this lease had been given its President or its Secretary by official Board action. I am advised by the Attorney General's office that in such cases the lease is not legally binding."
This suit was filed after that notice was sent to plaintiff, but before the date on which defendants planned to vacate the leased premises.
Plaintiff contends that the State Board of Education impliedly accepted the terms of the lease after it had been signed by its officers by allowing plaintiff to construct a warehouse in accordance with the provisions of the written contract, and by occupying the leased premises after the construction was completed and paying the rentals provided in the contract for a substantial period of time thereafter. He argues that these actions on the part of the State Board of Education constituted an acceptance of plaintiff's bid and caused the lease to become valid and binding on defendants, despite the fact that the Board did not formally authorize its officers to sign the agreement.
Defendants contend that the lease contract is null and void because it was never formally authorized by the Board of Education. They argue that the State Board of Education is prohibited by constitutional and statutory provisions from ratifying or impliedly accepting a contract which it has not formally authorized, and that the lease contract involved here thus has never become valid or enforceable. To support that argument, they rely on LSA-R.S. 17:2 and 5, and on Article IV, Sections 3 and 4, of the Louisiana Constitution.
The established rule is that a party who has the legal capacity to contract may be held in some instances to have accepted an offer, and thus to have entered into a binding contract, through silence or inaction or by some sort of performance under a written agreement, although the contract was not signed by the accepting party. Under such circumstances, the acceptance of the offer may be implied from the actions of the party to whom the offer was made. LSA-C.C. arts. 1797, 1803, 1811, 1816 and 1817. Advertiser, Division of Independent Inc. v. Tubbs, 208 So.2d 340 (La.App. 3 Cir. 1967); Alliance Manufacturing *558 Company v. Foti, 146 So.2d 464 (La.App. 4 Cir. 1962); Johnson v. Capital City Ford Company, 85 So.2d 75 (La.App. 1 Cir. 1955); Fisk v. Rowe, 91 So.2d 65 (La.App. 1 Cir. 1956).
We agree with the following language which was used by the First Circuit Court of Appeal in Johnson v. Capital City Ford Company, surpa:
"Acceptance of an offer may of course be made by silent deed as well as by word; consent may be implied from actions under the circumstances, as well as by expressed words; but such acceptance of, founded on such consent to, an offer nevertheless creates a valid contract, and the offerer is bound by the obligation previously offered by him in exchange for the act which the obligee has performed in response to the offer...."
When there had been an implied acceptance of an offer, the contract thus formed is as binding on the person so accepting the offer as it is on the offerer.
In the instant suit the State Department of Education advised the Division of Administration that it needed warehouse space in Natchitoches for use in connection with its food distribution or school lunch program, and the Department furnished the Division of Administration with a set of blue print drawings and specifications of the facilities it needed. The Division of Administration thereupon advertised for bids for the furnishing of the needed warehouse facilities, and plaintiff submitted the low bid in response to that advertisement. After bids had been received, the Department of Education determined that the proposal submitted by plaintiff was the best, and the President and Secretary of the State Board of Education thereupon signed a lease contract for and in behalf of the Board.
Plaintiff began constructing a warehouse and office building on the leased property in accordance with the plans submitted by defendant Board and the provisions of the contract. The State Board of Education did not object to the construction of that warehouse, although it was aware of the fact that it was being built pursuant to the contract, and as soon as it was completed the defendant Board occupied the leased premises and continued to occupy them at least until this suit was filed. The Board paid the rental payments required by the lease contract from September 1, 1970, untill June 30, 1972, a period of 22 months.
We think the actions of the defendant Board show clearly that the Board intended to accept and to ratify the contract which had been entered into by plaintiff and the officers of the State Board of Education. Our conclusion is that there was an implied acceptance by the Board of the bid or offer made by plaintiff, that the lease contract thus became valid and binding on the defendant Board, and that plaintiff thus is entitled to recover the rental payments provided in the contract.
Defendants argue, however, that the above mentioned rule of law applies only to private parties, that it does not apply to an agency or department of the State or to a public corporation, and that it particularly does not apply to the State Board of Education. They point out that Article IV, Section 3, of the Louisiana Constitution prohibits the Legislature from paying or authorizing the payment of any claim against the State, or any parish or municipality thereof, under any agreement or contract made without express authority of law, and that the same section provides that "all such unauthorized agreements or contracts shall be null and void." Section 4 of Article IV of the constitution prohibits the Legislature from passing a law "legalizing the unauthorized or invalid acts of any officer, servant, or agent of the State."
LSA-R.S. 17:2 and 17:5 provide that the State Board of Education is a "body politic and corporate," and that the acts of the board "shall be attested by the signatures of the president and secretary of the *559 board." Defendants contend that in view of these constitutional and statutory provisions, the Board of Education cannot be compelled to pay any sum to plaintiff under a contract which, although signed by officers of the board, has not been authorized by official action of the board.
We find no merit to this argument. The State Board of Education had the power to enter into a lease contract such as the one at issue in this case. LSA-R.S. 17:194 and 195. Since it had the power to enter into such a contract, we hold that it also had the power to ratify the lease previously executed by its officers. Chandler & Chandler v. Shreveport, 162 So. 437 (La.App. 2 Cir. 1935); Town of Morgan City v. Dalton, 112 La. 9, 36 So. 208 (1904).
There is nothing in the cited constitutional or statutory provisions which we think relieves the State Board of Education from liability here. Although the board did not formally adopt a resolution authorizing its president and secretary to sign the lease contract, it obviously authorized or approved that payments which were made pursuant to that lease for at least 22 months, and it apparently authorized the Department of Education to occupy and use the leased premises under the terms of the lease in conducting its school lunch program. Defendants do not contend that these payments were made without authority from the Board, and they do not deny that the Board authorized the occupancy and use of the leased premises. The authorization of these payments and the occupancy of the leased premises constituted a clear ratification or acceptance of the lease contract, and the contract thus was not an "unauthorized" agreement as that term is used in Article IV; Sections 3 and 4, of our Constitution.
Our conclusion is that the State Board of Education may expressly or impliedly ratify a previously executed contract which it had the power to enter into, even though the Board may not have formally authorized such an agreement at the time the written contract was signed. In this case, we have found that the Board impliedly ratified the lease contract which forms the basis for plaintiff's demands.
Defendant argues that by filing suit and sequestering the movable property on the leased premises plaintiff disturbed the peaceable possession of the leased property by the defendant lessee, and that plaintiff thereby terminated the lease agreement.
Under the provisions of Article 3572 of the Louisiana Code of Civil Procedure, a sequestration based on a lessor's privilege may be obtained before the rent is due, if the lessor has good reason to believe that the lessee will remove the property subject to the lessor's privilege. In his letter to plaintiff dated May 26, 1972, defendant Michot stated that the Director of Food Services and Distribution would "immediately take the necessary steps to vacate the building within the next thirty days." That statement by Michot was sufficient to give plaintiff good reason to believe that defendants would remove the property subject to the lessor's privilege, and thus it was sufficient to justify the sequestration.
The action of the lessor in having the movable property on the leased premises sequestered did not have the effect of denying the defendant lessee the peaceable possession of those premises. Plaintiff merely exercised the right which is expressly granted to him by LSA-C.C.P. art. 3572, and the exercise of that right alone does not have the effect of terminating the lease. Morgan v. Agricultural Enterprises, Inc., 127 So.2d 335 (La.App. 2 Cir. 1961); Maggio v. Price, 1 So.2d 404 (La.App. 1 Cir. 1941); Henry Rose Mercantile & Mfg. Co. v. Stearns, 154 La. 946, 98 So. 429 (1923). Although movable property located in the leased premises was sequestered, there has been no showing that defendants' right of peaceable possession of those premises was ever disturbed. The movable property which had been sequestered was released less than one month after *560 the seizure, and since the record does not show otherwise, we assume that defendants have not been deprived of the use of the warehouse building.
We conclude that the institution of this suit by plaintiff, accompanied by the sequestration of the movable property on the leased premises, did not have the effect of terminating the lease contract. Since the sequestration did not interfere with defendants' use or possession of the leased premises, it is unnecessary for us to consider the question of whether defendants' property was immune from seizure.
The trial judge awarded plaintiff $1,500.00 per month (the monthly rental under the lease) for the remainder of the life of the contract. Plaintiff argues that all future rental payments should be accelerated and made due immediately.
There is no acceleration clause in the lease contract between plaintiff and defendant. Plaintiff cites three cases, however, which hold that when a tenant abandons the leased premises before the expiration of the lease, he is bound for the rent for the whole term. Those cases are not applicable here, because the evidence in this case does not support a finding that defendants have abandoned the leased property.
In order for there to be an "abandonment" of leased property by a tenant sufficient to entitle the lessor to recover all future rental payments, two essential elements must be present, namely, an intent to abandon the property and an act of abandonment. Donnell v. Gray, 34 So.2d 648 (La.App. 2 Cir. 1948); Powell v. Cox, 92 So.2d 739 (La.App. 2 Cir. 1957). "Abandonment" of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person. Powell v. Cox, supra; New Orleans Bank & Trust Co. v. City of New Orleans, 176 La. 946, 147 So. 42 (1933). The letter from Michot to plaintiff dated May 26, 1972, shows an intent to abandon the leased premises by defendants. There, however, is no evidence in the record showing an act of abandonment. We conclude, therefore, that plaintiff is not entitled to have the monthly rental payments due under the lease accelerated.
Serious legal questions were presented on this appeal, and we thus reject plaintiff's demand for damages on the ground that the appeal was frivolous.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.