344 So.2d 394 (1977)
STUPP CORPORATION
v.
CON-PLEX, DIVISION OF U. S. INDUSTRIES.
No. 11162.
Court of Appeal of Louisiana, First Circuit.
March 21, 1977.
James H. Hynes and John C. Miller, Baton Rouge, of counsel for plaintiff-appellee Stupp Corporation.
Gordon A. Pugh and Charles Lamar, Breazeale, Sachse & Wilson, Baton Rouge, of counsel for defendant-appellant Con-Plex, Division of U. S. Industries, Inc.
Before LANDRY, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This is a suit by Stupp Corporation to collect the unpaid purchase price on steel piling sold to the defendant, Con-Plex, Division of U. S. Industries, Inc. In its answer Con-Plex denied that any amount was owed, and reconvened for over-payments it contends were made through mistake.
After trial on the merits, the trial court rendered judgment in favor of Stupp on the principal demand and dismissed the reconventional demand. Con-Plex has appealed.
The following facts were set forth in the Trial Judge's written reasons for judgment, and are not materially controverted on this appeal.
After inquiring as to Stupp's current price for its products, Con-Plex sent a purchase order form, dated June 25, 1973, to Stupp. This purchase order was for 92,900 linear feet of 14 inch pipe piling at the unit price of $2.98 per foot and 1,090 ¾-inch *395 thick end plates at $7.00 per plate. The prices were consistent with the then current listing price of the seller, Stupp. In addition, the purchase order provided for the collection, by Stupp, of a 5% sales tax and that all pipe was to be furnished "in strict accordance with Louisiana Dept. of Highways' plans, Standard Specification (Oct. 1971) and Special Provisions."
Subsequent to the receipt of this purchase order by Stupp, a telephone conversation occurred between representatives of Stupp and Con-Plex, relative to the purchase order. The substance of this conversation was confirmed in a letter from J. R. Barton, District Sales manager of Stupp, to Con-Plex. The letter stated that Stupp was not authorized to collect the 5% sales tax as requested by Con-Plex, but that Stupp could collect a sales tax of 3%, and that Stupp was not familiar with the La. Highway Department specifications, but that Stupp could furnish steel pipe in accordance with "ASTM A 252, Grade 2 Specifications."
Attached to this letter and referred to therein was Stupp's Order Acknowledgment, which contained the substance of the original purchase order as modified by the two changes discussed during the intervening telephone conversation. On the reverse side of this order acknowledgment, there were printed numerous conditions styled "Standard Condition of Sale." Condition number one stated in pertinent part:
"Tubular mill products will be billed in accordance with our posted prices in effect at date of shipment, where applicable. Special job lot work will be billed at quoted prices plus escalation applicable thereto from date of proposal. Posted prices are subject to change without prior notice."
On August 13, 1973, Con-Plex sent a letter amending the purchase order in compliance with the above letter from Stupp. A representative of each party signed this letter of August 13, 1973 under the word Acceptance. Shortly thereafter, Stupp started shipments of pipe piling and end plates to Con-Plex.
By letter dated February 1, 1974, Stupp advised all its customers, including Con-Plex, that a price increase was being instituted on all tubular products effective February 4, 1974. J.J. Dodson, Jr., Area Manager for Con-Plex, testified that he received the letter from Stupp, but that he did not attribute any significance to the price increase as he believed there was a firm contract in connection with the pipe piling from Stupp. In any event, Con-Plex did not at that time protest the announced price increase.
The invoices for piling shipped after February 4, 1974 were at the increased price. Seventeen invoices were approved by Con-Plex's job superintendent, and except for the last two, all of them were paid without protest.
At one point in March 1974, Stupp discontinued shipments because Con-Plex was in arrears more than $90,000.00. This arrearage included invoices at the original price, as well as at the increased price. When Con-Plex's piling superintendent inquired about the stoppage of shipments he was reminded of the price increase. No protest was lodged, rather Con-Plex forwarded its check to cover the arrearage, and shipments resumed.
After all pipe shipments were received, Con-Plex sent a letter to Stupp stating that payments at the increased price had been made through administrative error, and in view thereof, payment of the final two invoices ($4,037.49) was being withheld.
Thereafter, Stupp instituted suit for this $4,037.49 unpaid balance, and Con-Plex reconvened for $19,999.56 representing payments in excess of the original price.
At trial, both parties assumed that a valid contract existed, but they differed as to its terms. Stupp's contention was that its acceptance was subject to its standard escalation clause contained in the Order Acknowledgement, and that Con-Plex was bound by the escalated price. Con-Plex contended that the contract contained a fixed price under the terms of its purchase order as modified in the August 13, 1973 letter.
*396 The court held that the parties never entered into a binding written contract because there was never a meeting of the minds on the issue of price. (LSA-C.C. art. 2464). However, the court further held that a binding contract arose when Con-Plex, with knowledge of the price increase, received the pipe shipments and paid for them at the increased price. Con-Plex was obligated, under this implied contract, to pay for the final two shipments of pipe at the escalated price.
The issue presented for review is, did the Trial Court err in holding that Stupp and Con-Plex had not entered into a binding written contract at a fixed price.
In the instant case, we are faced with a situation where the parties intended to enter into a contract of sale. This contract must meet the requisites for an ordinary contract (LSA-C.C. art. 1779) and additionally must satisfy the requirements for a sale as stated in LSA-C.C. art. 2439.[1]
LSA-C.C. art. 2464 states, in pertinent part:
"The price of the sale must be certain, that is to say, fixed and determined by the parties."
The question then becomes, was there a meeting of the minds on price in the purported written contract between Stupp and Con-Plex? The Trial Court answered in the negative. We agree.
It is clear that Con-Plex viewed the purchase order as establishing a firm price for the duration of the contract. Equally clear is the fact that Stupp believed its escalation clause was a part of the contract, as it was a standard part of all their contracts.
This misunderstanding is referred to by Con-Plex as a classic case of the "battle of the forms." We cannot accept Con-Plex's contentions, as we believe that the misunderstanding regarding the inclusion of the escalation clause in the contract demonstrates that there was no meeting of the minds on the price issue. Absent consent as to price, the contract was void because it did not fulfill the requirements of Civil Code article 2439.
Even though the written contract was invalid, for want of consent as to price, the subsequent actions of the parties must be examined to determine if a contract arose by some other means, (LSA-C.C. arts. 1811 and 1816). The law is clear that a contract of sale need not be in writing to be valid, so long as all the requisites to its formation are fulfilled, and may even be implied from action, inaction, or silence. Salim v. La. State Board of Education, 289 So.2d 554 (La.App. 3rd Cir. 1974); LSA-C.C. arts. 1811, 1816, 1817.
An examination of the record discloses that in its Order Acknowledgement Stupp clearly stated its right to increase prices, and Con-Plex was informed of Stupp's price increase before any shipments were made at the increased price. Thereafter, Con-Plex received, accepted and used seventeen shipments of pipe piling and end plates. Payment was made on fifteen of these shipments, without protest. Only after all shipments had been received by Con-Plex was there any objection to the price increase.
Therefore, we conclude that the Trial Court was correct in holding that Con-Plex entered into a subsequent contract at the higher price.
For the reasons assigned, the judgment appealed from is affirmed at defendant's cost.
AFFIRMED.
NOTES
[1] LSA-C.C. art. 2439

"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."